2022 IL App (1st) 211001

SIXTH DIVISION
May 27, 2022

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-21-1001

| | | |
|---|---|---|
| MARY BAIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 12077 |
| | ) | |
| AIROOM, LLC, a/k/a The Airoom Companies, LLC, | ) | Honorable |
| | ) | Margaret Ann Brennan, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Mary Bain sued defendant Airoom, LLC, alleging that the company overcharged her for shoddy and incomplete remodeling work undertaken on her home. The circuit court granted Airoom's motion to compel arbitration and dismissed Ms. Bain's complaint with prejudice. Ms. Bain argues on appeal that (1) the court incorrectly required her to establish both procedural and substantive unconscionability before it would conclude that the arbitration agreement was unenforceable, (2) the arbitration agreement in Airoom's form contract is both procedurally and substantively unconscionable, and (3) even if arbitration were proper, the court should have stayed the case rather than dismissing it.

¶ 2     For the reasons that follow, we conclude that several significant provisions in the

arbitration agreement are unconscionable, that the agreement cannot be cured by a simple act of modification or severance, and that the agreement as a whole is unenforceable. We reverse the circuit court's order and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4      Ms. Bain alleged in her complaint that she is a disabled senior citizen who has owned her home on West Touhy Avenue in Chicago since 1978. On October 27, 2018, Ms. Bain entered into a "Cash Sales Contract" with Airoom, a home remodeling company based in Lincolnwood, Illinois, to remodel several of the home's rooms for a total price of $210,300. Ms. Bain alleged that Airoom "fail[ed] to start or finish the work within a reasonable period of time," performed work on her home "only sporadically," demanded additional payments from her for work that should have been included in the contract, "[u]nnecessarily demolish[ed] part of [her] house in order to create more costs to [her]," and contracted with her to perform work that was not even feasible, given the failing structural condition of a portion of the home.

¶ 5      When a year had passed and Airoom had "failed to complete even just one bathroom," Ms. Bain canceled the contract. As a result of the "grossly overpriced and improperly performed home repair contract," Ms. Bain alleged that she paid Airoom over $180,000 for work appraised to be worth only $40,000. She brought claims against the company for breach of contract, breach of the implied warranty of reasonable workmanship and materials, and violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2018)). In connection with these claims, Ms. Bain sought actual and punitive damages, attorney fees, and litigation costs.

¶ 6      Airoom's form contract, which Ms. Bain attached to her complaint, appears in the record on two scanned sheets of paper and comprises 20 paragraphs set out in four numbered columns

2

or—if, as it appears, the sheets were designed to be folded into a booklet—four numbered pages. Paragraph 20, appearing at the bottom of the last page, is a binding arbitration agreement. Although it is lengthy, because a number of the provisions in the agreement are relevant to our analysis, we set it out here in full:

"20. BINDING ARBITRATION. Any controversy or claim arising out of, or relating to the Contract, the Contract Documents, the Project or the Real Estate shall be resolved by binding arbitration. All arbitrations shall be conducted in Chicago, Illinois before an arbitrator selected in accordance with, and shall be conducted pursuant to, the Construction Industry Arbitration Rules of the American Arbitration Association (www.adr.org) or any other alternative dispute resolution firm, at Airoom's sole and absolute discretion. The arbitrator shall have the authority to award only compensatory damages. Except where prohibited by law, the arbitrator shall have no authority to award punitive or exemplary damages, and in any event, the arbitrator shall make no ruling, finding or award that does not conform to the terms and conditions of the Contract Documents. Costs and fees of arbitration may be awarded to the prevailing party. 'Costs and fees' shall mean all reasonable expenses of arbitration including the arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, and witness fees, but shall not include either party's attorney's fees or costs. The arbitration award shall be in writing and shall specify the factual and legal basis for the award. In rendering the award, the arbitrator shall determine the rights and obligations of the parties in accordance to the substantive laws of Illinois without regard to its provisions regarding conflicts of law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof and the costs incurred in

connection with any action to confirm the arbitration award shall be awarded by the court. Neither party nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties. If Buyer rejects or does not accept this binding arbitration provision, it shall be deemed a counter offer [*sic*] to Airoom to proceed with the Contract, without the terms of this paragraph. In such case, Buyer's counter-offer may only be accepted in writing by an authorized officer of Airoom. If Buyer's counter-offer is not accepted by Airoom within 5 days, the Contract shall become null and void and of no further force and affect."

Ms. Bain initialed each page of Airoom's contract and, in the margin adjacent to the above agreement, wrote her initials again, circled "accept" from the options "accept/reject," and also wrote out the word "accept."

¶ 7     On the basis of this agreement, Airoom moved the circuit court to compel arbitration pursuant to section 2(a) of the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/2(a) (West 2018)) and to either stay the proceedings pending the outcome of the arbitration or dismiss the complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILC 5/2-619(a)(9) (West 2018) (providing for dismissal where the claim asserted "is barred by other affirmative matter avoiding the legal effect of or defeating the claim")).

¶ 8     Ms. Bain argued that Airoom's arbitration agreement was unenforceable. The agreement was procedurally unconscionable, she maintained, because she had substantially less bargaining power than Airoom and was given no reasonable opportunity to understand the agreement before she signed it. Ms. Bain alleged that she was required to provide her signature or initials—not just on the contract itself but on the accompanying schedules and specifications as well—over 48 times that day. In an attached affidavit she stated that "the Airoom representative had [her] signing and

4

initialing so many pages nonstop, it felt like [her] eyes started crossing and glazing over." Ms. Bain further averred that Airoom's representative did not explain the arbitration agreement to her, did not indicate that by signing the contract she would be giving up her right to a jury trial, and did not discuss with her the sorts of fees or costs that could be associated with arbitration.

¶ 9        Ms. Bain also argued that the arbitration agreement was substantively unconscionable. She pointed out that it (1) gave Airoom sole power to choose the arbitral forum; (2) precluded an award of punitive damages; (3) provided for costs and fees to be awarded to the prevailing party; (4) precluded an award of attorney fees, even where such fees were specifically allowed by the statute under which one of her claims was brought; (5) prevented the arbitrator from making any finding that conflicted with the express terms of the contract; and (6) contained a strict confidentiality clause. Collectively, Ms. Bain argued, these provisions put her at a great disadvantage to Airoom.

¶ 10       Ms. Bain also maintained that the costs of arbitrating a claim under the rules specified by Airoom—the Construction Industry Arbitration Rules of the American Arbitration Association (AAA)—would prevent her from ever seeking arbitration of her claims. In her affidavit, Ms. Bain stated that her only source of income was $780 per month in Social Security retirement benefits, she had only $5000 in savings, and she understood—based on her understanding that her claim was considered a "Level 3" dispute potentially worth between $100,000 and $1,000,000—that it would cost "as much as $5,350, plus the hourly fees of the arbitrator assigned to the case, and fees for hearing room rental" to pursue her claims against Airoom under the selected rules. Altogether, Ms. Bain estimated that she "could be required to pay $13,000 or more, just for the opportunity to have her case heard," an amount that was "prohibitively expensive" given her financial situation.

¶ 11       Finally, if the court were to compel arbitration, Ms. Bain argued that a stay rather than the

dismissal of her claims was proper.

¶ 12    Airoom argued in reply that its arbitration agreement was a "standard, enforceable arbitration agreement" like those "found in contracts signed every day"; that it had complied with the requirements of the Home Repair and Remodeling Act (815 ILCS 513/15.1(a)(i) (West 2018)) on the inclusion of arbitration agreements in home remodeling contracts; and that, if the court found any portion of the agreement objectionable, that portion could be severed and the agreement itself would remain enforceable.

¶ 13    The circuit court granted Airoom's motion. It began by citing *Ramette v. AT&T Corp.*, 351 Ill. App. 3d 73, 87 (2004), for the proposition that " 'unless [an arbitration agreement] is found to be *both* procedurally and substantively unconscionable, it is not unconscionable under Illinois law and will be enforced.' " (Emphasis added.) The court then concluded that the arbitration agreement in Airoom's contract was not procedurally unconscionable because "the terms of the provision were clearly laid out," Ms. Bain had indicated her acceptance of the agreement by writing her initials and circling and writing the word "accept" in the margin next to the agreement, and the court was not persuaded by her argument that she lacked bargaining power and had no meaningful choice regarding whether to agree to arbitration. The court agreed with Ms. Bain, however, that the "provision waiving punitive damages [was] unenforceable" under Illinois law and concluded that it "should therefore be severed." The court granted Airoom's motion to compel arbitration and, because all of Ms. Bain's claims related to or arose out of the parties' contract, dismissed her complaint in its entirety.

¶ 14    Ms. Bain moved the court to reconsider its ruling, arguing that (1) by requiring her to establish both procedural and substantive unconscionability, the court had applied an outdated legal standard and (2) the court should have stayed the case pending the result of the arbitration

rather than dismissing it with prejudice.

¶ 15     The court denied the motion without analysis and this appeal followed.

¶ 16                                II. JURISDICTION

¶ 17     The circuit court granted Airoom's motion to compel arbitration and dismissed Ms. Bain's complaint on March 26, 2021. It denied her motion for reconsideration on July 16, 2021. Ms. Bain filed a timely notice of appeal from the court's orders on August 13, 2021. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 18                                III. ANALYSIS

¶ 19     At the outset, we must reject Airoom's oral argument, made to this court, that Ms. Bain's appeal is now moot. Counsel informed us that since the filing of this appeal, Ms. Bain took steps to initiate arbitration proceedings before the AAA. Counsel agreed, however, that Airoom has as yet paid no fees associated with those proceedings, that the arbitration has been stayed pending the outcome of this appeal, and that it would be dismissed if this court were to rule in Ms. Bain's favor. An appeal is moot when "intervening events have rendered it *impossible* for the reviewing court to grant effectual relief to the complaining party." (Emphasis added and internal quotation marks omitted.) *Felzak v. Hruby*, 226 Ill. 2d 382, 392 (2007). These preliminary steps taken by Ms. Bain to preserve her rights in arbitration, if she is unsuccessful here, do not prevent this court from deciding the merits of her appeal.

¶ 20     "[P]ublic policy in Illinois favors arbitration" (*Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 59 (2011)), and our legislature, by adopting the Arbitration Act has placed arbitration agreements on equal footing with other contractual promises (see 710 ILCS 5/1 (West 2018) (providing that an arbitration agreement "is valid, enforceable and irrevocable save upon such

grounds as exist for the revocation of any contract")). "Where there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory," and "the trial court must compel it." *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1175 (2002).

¶ 21    Like other contracts, however, an arbitration agreement "may be invalidated by a state law contract defense of general applicability, such as fraud, duress, or unconscionability." *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 18. Here, Ms. Bain agrees both that the contract she signed contains an arbitration agreement and that her claims against Airoom fall within the scope of that agreement. Her argument is that the agreement is unenforceable because it is both procedurally and substantively unconscionable. This is a question of law, which we review *de novo. Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22 (2006).

¶ 22                              A. Enforceability of Arbitration Agreements

¶ 23    As an initial matter, Ms. Bain is correct that, by requiring her to demonstrate that the arbitration agreement in Airoom's contract was *both* procedurally and substantively unconscionable before it would decline to enforce it, the circuit court applied an incorrect and outdated legal standard. That proposition, found in this court's opinion in *Ramette*, 351 Ill. App. 3d at 87, was later rejected by our supreme court in *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006). As our supreme court has more recently confirmed, "[a] finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel*, 223 Ill. 2d at 21.

¶ 24    " 'Procedural unconscionability consists of some impropriety during the process of forming the contract' " that has " 'depriv[ed] a party of a meaningful choice.' " *Kinkel*, 223 Ill. 2d at 23 (quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980,

990 (1998)). It "refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Razor*, 222 Ill. 2d at 100. In deciding whether a contractual provision is procedurally unconscionable, courts consider "all of the circumstances surrounding the transaction," including whether each party had the opportunity to understand the terms of the contract, any "disparity of bargaining power between the drafter of the contract and the party claiming unconscionability," and whether important terms were "hidden in a maze of fine print." (Internal quotation marks omitted.) *Kinkel*, 223 Ill. 2d at 22-24.

¶ 25 "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." (Internal quotation marks omitted.) *Kinkel*, 223 Ill. 2d at 28. It may be found where "contract terms are so one-sided as to oppress or unfairly surprise an innocent party," there is "an overall imbalance in the obligations and rights imposed by the bargain," or a "significant cost-price disparity" exists. (Internal quotation marks omitted.) *Id.*

¶ 26                    B. Arbitration Agreements in Consumer Contracts

¶ 27 Many of Ms. Bain's arguments center on the fact that she is an unrepresented consumer who has been required to sign a preprinted form contract containing an arbitration agreement that was not specifically brought to her attention and that she had no opportunity to understand or bargain for. But as our supreme court made clear in *Kinkel*, in response to a similar contract*:*

> "[This] is a contract of adhesion. The terms, including the arbitration agreement and the
>
> class action waiver therein, are nonnegotiable and presented in fine print in language that
>
> the average consumer might not fully understand. Such contracts, however, are a fact of
>
> modern life. Consumers routinely sign such agreements to obtain credit cards, rental cars,
>
> land and cellular telephone service, home furnishings and appliances, loans, and other

products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Id.*

¶ 28    However, as the *Kinkel* court also recognized, unequal bargaining power and other "circumstances surrounding the transaction" are to be considered when we are deciding whether to enforce such agreements. *Id.* at 24. For this reason, when examining the substantive provisions of such an agreement, courts are " 'more likely to find unconscionability' " where, as here, " 'a consumer is involved, *** there is a disparity in bargaining power, and *** [the agreement in question] is on a pre-printed form.' " *Id.* (quoting *Razor*, 222 Ill. 2d at 100).

¶ 29         C. The Substantive Provisions of Airoom's Arbitration Agreement

¶ 30    With this in mind, we turn to the specific provisions of Airoom's arbitration agreement, several of which we find to be unconscionable and therefore unenforceable. This agreement includes a bar on the recovery of attorney fees and punitive damages; a requirement that all decisions of arbitrators be kept confidential, unless both parties agree otherwise; and a requirement that all arbitrations be held pursuant to the AAA Construction Industry Arbitration Rules and Mediation Procedures (Construction Industry Rules), unless Airoom, in its sole discretion, chooses a different forum and set of procedures. These provisions, each of which we find to be unconscionable, are discussed in more detail as follows.

¶ 31         1. Ban on the Recovery of Attorney Fees and Punitive Damages

¶ 32    The arbitration agreement in this case provides that "[t]he arbitrator shall have the authority to award only compensatory damages" and permits an award of the "[c]osts and fees of arbitration" to the prevailing party," but it specifies that these "shall not include either party's attorney's fees or costs." As the circuit court appears to have recognized, in striking the agreement's ban on punitive damages as unconscionable, Illinois law precludes limiting remedies available under the

Consumer Fraud Act.

¶ 33    The Consumer Fraud Act, under which Ms. Bain has asserted a claim, specifically calls for an award of "reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c) (West 2018). The Consumer Fraud Act also provides for an award of "actual economic damages *or any other relief which the court deems proper*" (emphasis added) (*id*. § 10a(a)). Our supreme court has recognized that punitive damages are thus recoverable under the Consumer Fraud Act. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 79-80 (1994). The Consumer Fraud Act further provides that "[a]ny waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable." 815 ILCS 505/10c (West 2018).

¶ 34    The circuit court struck the ban on collecting punitive damages from Airoom's arbitration agreement, and Airoom did not file a cross-appeal from that ruling. For the same reasons that barring recovery of punitive damages is impermissible, the ban on attorney fees violates Illinois law. And its impact on a consumer's ability to pursue a claim is even more tangible.

¶ 35    Ms. Bain cites two cases, *Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 WL 4263995, *5 (N.D. Ill. Sept. 26, 2017), and *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 931 (N.D. Ill. 2005), in which federal courts applying Illinois law have found such waivers unenforceable and explained why contractual provisions that conflict with statutory fee-shifting requirements are so problematic. The *Brne* court concluded that a fee-shifting provision in the Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2016)) was a critical element of that statute designed "to encourage potential claimants, and their counsel, to pursue potential claims against their employers, even for relatively small damages." *Brne*, 2017 WL 4263995, at *5. The *Safranek* court likewise noted that the "preemptive denial of attorney's fees [kept] the statute" in that case—Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*

(2000))—"from serving its remedial and deterrent purposes." *Safranek*, 379 F. Supp. 2d at 931.

¶ 36    And as our supreme court has repeatedly recognized:

" '[I]n consumer fraud cases the attorney fee awards can easily constitute the largest part

of a plaintiff's recovery. The legislature realized this when it enacted the fee-shifting

provision of the Consumer Fraud Act. That provision is premised on the recognition that

plaintiffs would be reluctant to seek redress for consumer fraud if the recovery would be

nearly or completely consumed by attorney fees and was designed to encourage plaintiffs

who have a cause of action to sue even if recovery would be small.' " *Krautsack v.*

*Anderson*, 223 Ill. 2d 541, 557 (2006) (quoting *Cruz v. Northwestern Chrysler Plymouth*

*Sales, Inc.*, 179 Ill. 2d 271, 279-80 (1997)).

¶ 37    Airoom argues that just because "costs and fees" under its agreement do not include

attorney fees does not necessarily mean that an arbitrator would be prevented from making an

award of such fees in connection with Ms. Bain's Consumer Fraud Act claim. But, as noted above,

Airoom's arbitration agreement also provides that "[t]he arbitrator shall have the authority to

award *only compensatory damages*." (Emphasis added.) While counsel for Airoom suggested at

oral argument in this court that this limitation does not preclude an award of attorney fees, he

offered no support for that interpretation. A straightforward reading of the agreement suggests that

an arbitrator would *not* be able to award Ms. Bain either attorney fees or punitive damages. The

agreement thus impermissibly limits Ms. Bain's recovery in contravention of clear statutory

language, which is unconscionable.

¶ 38                                    2. Confidentiality

¶ 39    Airoom's arbitration agreement also prohibits either party or the arbitrator from disclosing

"the existence, content, or results of any arbitration" without "the prior written consent of both

parties." Airoom insists that this provision is not unfairly one-sided because it applies to both parties. As a repeat player in arbitrations under its own contract, however, Airoom will of course have access to information about past proceedings that the individual homeowners it arbitrates with will lack. Our supreme court acknowledged in *Kinkel* that this dynamic further "burden[s] an individual customer's ability to vindicate [his or her] claim[s]." *Kinkel*, 223 Ill. 2d at 42. It "contributes to the substantive unconscionability" of the contract " 'by ensuring that none of [the defendant's] potential opponents will have access to precedent while, at the same time, [the defendant] accumulates a wealth of knowledge.' " *Id.* (quoting *Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003)).

¶ 40    Airoom's assertion that Ms. Bain could experience similar difficulties collecting relevant precedent from filed court cases, which often settle confidentially, misses the point. Parties are free to settle *unresolved* claims of liability confidentially. Depriving only one side of a transaction from access to information about cases where a neutral decision maker has rendered a decision on the merits is something quite different. The company's blithe suggestion that Ms. Bain is free to request information "about claims or lawsuits substantially similar to her situation" is equally unpersuasive. The confidentiality provision in Airoom's arbitration agreement is also substantively unconscionable.

¶ 41                                3. Construction Industry Rules

¶ 42    There is a third provision in Airoom's arbitration agreement that we also find to be unconscionable, though perhaps less obviously so. It requires that any arbitration be conducted under rules and procedures that are plainly ill-suited for and unnecessarily costly for someone suing a company that has done renovation work on their residential home. Specifically, the agreement provides that: "All arbitrations shall be conducted *** before an arbitrator selected in

accordance with, and shall be conducted pursuant to, the Construction Industry Arbitration Rules of the American Arbitration Association (www.adr.org) or any other alternative dispute resolution firm at Airoom's sole and absolute discretion." These rules and procedures appear designed primarily for complex construction industry disputes. The AAA has another set of rules, however, specifically designed to make the resolution of home remodeling disputes streamlined and affordable for both parties. The existence of those rules is not disclosed in Airoom's contract.[1]

¶ 43    As noted in the AAA's prefatory comments to the rules, the Construction Industry Rules establish four tracks for the arbitration of claims, including a track that is designed for "Large, Complex Construction Disputes." These are disputes in excess of $1,000,000. In the comments preceding its Home Construction Arbitration Rules and Mediation Procedures (Home Construction Rules), in contrast, the AAA makes clear that those rules are instead "designed specifically for home construction disputes between a homeowner and a home builder." The AAA advises companies to "[p]lease reference" the Home Construction Rules "in any new agreements, contracts, or warranties related to residential construction and remodeling." These Home Construction Rules are designed to "provide both parties with fair and cost-effective mediation or arbitration of their dispute" and are the default rules that apply for the arbitration of home construction disputes by the AAA where no particular set of rules has been specified.

---

[1] Both sets of rules and their corresponding fee schedules are available online. AAA Construction Industry Arbitration Rules and Mediation Procedures, https://www.adr.org/sites/default/files/Construction-Rules-Web.pdf [https://perma.cc/SRA6-ZAZT] (last visited May 18, 2022); AAA Construction Industry Arbitration Rules and Mediation Procedures Fee Schedule, https://www.adr.org/sites/default/files/Construction_Arbitration_Fee_Schedule_0.pdf [https://perma.cc/8TRT-4L92] (last visited May 18, 2022); AAA Home Construction Arbitration Rules and Mediation Procedures, https://www.adr.org/sites/default/files/Home_Construction_Arbitration_Rules_and_Mediation_Procedures.pdf [https://perma.cc/84K3-DE4V] (last visited May 18, 2022); AAA Home Construction Industry Arbitration Rules and Mediation Procedures Fee Schedule, http://go.adr.org/rs/294-SFS-516/images/Home_Construction_Fee_Schedule.pdf [https://perma.cc/Y4ZL-92WJ] (last visited May 18, 2022).

¶ 44    The administrative fees associated with the two sets of rules differ. Ms. Bain has alleged that her claims are worth between $100,000 and $1,000,000. According to the fee schedule for the Construction Industry Rules, claims in this range are subject to an initial filing fee of between $1750 and $5000 and an additional fee paid when a hearing is scheduled of between $1250 and $6200. For claims in this same range under the Home Construction Rules, a builder pays an initial filing fee of either $1625 or $3250 (depending on whether the claims are worth more or less than $300,000) and a hearing scheduling fee of either $800 or $1500. A homeowner, however, pays a filing fee of only $650 or $1250 and a hearing scheduling fee of only $300 or $475.[2]

¶ 45    We were informed for the first time at oral argument in this appeal that after Ms. Bain filed her arbitration demand, her lawyer contacted AAA and successfully obtained a waiver of Ms. Bain's filing fee. Nothing in the record confirms this, but even accepting it as true, this fact does not affect our analysis. Our supreme court has made clear that substantive unconscionability concerns the "*actual terms* of the contract" (emphasis added) and "the relative fairness of the obligations assumed" in those terms. (Internal quotation marks omitted.) *Kinkel*, 223 Ill. 2d at 28. The fact that a third party may have conveyed a financial benefit on Ms. Bain, allowing her to more easily afford arbitration in this instance, tells us nothing about the substantive fairness of the terms Airoom chose to include in its contract.

¶ 46    In addition to the higher administrative fees, it also appears that the arbitrator's fees would be considerably higher under the Construction Industry Rules than under the Home Construction

---

[2] At oral argument, counsel for Ms. Bain seemed to confuse the Home Construction Rules with AAA's Consumer Arbitration Rules. In her briefing, however, she acknowledged that the Consumer Arbitration Rules, which state that they apply only to the purchase of standardized, consumable goods or services, "do not apply to home remodeling contracts" and focused on the fact that arbitration is far less costly for homeowners under the Home Construction Rules than under the Construction Industry Rules mandated here.

Rules. Rules 3 and 14 of the Construction Industry Rules require arbitrators to be selected from an exclusive "National Panel" of individuals deemed by the AAA to be competent to hear and decide such disputes. As the prefatory comments to the rules explain, these are individuals who are "actively engaged in the construction industry," who generally "devot[e] at least half of their practice to construction matters," and who are to be "compensated at a rate consistent with [their] stated rate[s] of compensation." The fee schedule for AAA's Home Construction Rules, on the other hand, establishes a flat rate for arbitrator compensation that presumes only a one-day hearing will be required. For Level 3 disputes, such as Ms. Bain's dispute with Airoom, the homeowner and the builder each pay between $1000 and $1250 for a one-day hearing. Only if additional days of hearing are required do the parties share the cost of compensating the arbitrator at his or her standard hourly rate.

¶ 47 The higher administrative fees and arbitrator's fees under the Construction Industry Rules are particularly significant, as the arbitration agreement provides that Ms. Bain risks having to pay both her share and Airoom's share of these fees. Under the agreement, "costs and fees of arbitration may be awarded to the prevailing party," and those include "all reasonable expenses of arbitration including the arbitrator's fees."

¶ 48 We note that, although the arbitration agreement allows Airoom, "at its sole and absolute discretion," to choose another set of rules or forum, this does nothing to address the problems outlined above. Indeed, the provision simply gives Airoom the power to choose another, perhaps even more expensive and less appropriate, forum and set of rules for resolving this dispute.

¶ 49 As our supreme court recognized in *Kinkel*, unconscionability may be based on a "combination of both" procedural and substantive unconscionability. *Kinkel*, 223 Ill. 2d at 21. Compounding the substantive unfairness of Airoom's choice of the Construction Industry Rules

is the way in which this requirement was presented to her. The arbitration agreement referred Ms. Bain to AAA's webpage. The Construction Industry Rules appear on the AAA's arbitration page. The Home Construction Rules are not listed on that page, however, and appear to be accessible only by going to the "Practice Areas" tab on the site's main menu and scrolling down to a section labeled "Home Construction Disputes," which then takes the reader to the rules and their corresponding fee schedule. Because the arbitration agreement did not disclose the existence of these far more suitable rules, Ms. Bain would have had to do her own research to discover them.

¶ 50    This is not unlike the contract in *Kinkel*, which stated that " 'fee information' was available from [the defendant] or the AAA 'upon request.' " *Id.* at 26. The court noted that "[t]his statement, incorporating by reference information that was not provided to [the] plaintiff at the time she signed the agreement, was a factor that the court could and did consider "in combination with [its] findings on the question of [the] substantive unconscionability" of the provision at issue in that case. Here, the manner in which the choice of the Construction Industry Rules was presented to Ms. Bain confirms our finding that this choice was substantively unconscionable.

¶ 51                                C. Severability

¶ 52    We must consider whether the arbitration agreement can be salvaged by removing all of these unenforceable provisions. It is well established that a court may, in its discretion, "modify a contract so that it comports with the law or sever unenforceable provisions from a contract." *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 21 (1993). The existence of a severability clause strengthens the case for doing so, as it makes clear that the parties intended "for the lawful portions of the contract to be enforced in the absence of the unlawful portions." *Abbott-Interfast Corp.*, 250 Ill. App. 3d at 21. Here, paragraph 17 of Airoom's contract provides that "[i]f any provision of the Contract Documents or the Warranty shall become or be held by any court or

arbitrator to be illegal, invalid, unenforceable or against public policy for any reason, then such provision shall be severed" and the remaining provisions "shall not be affected and shall remain in full force and effect." The circuit court, believing that the only unenforceable provision in the contract was the punitive damages waiver, considered it appropriate to sever that provision and enforce the remainder of the arbitration agreement as written. We have approved of such measures, where a contractual provision is modified "only slightly" and "the balance of the restrictions [are] reasonable and necessary to protect [the drafting party's] legitimate business interests." *Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 80 (1992).

¶ 53    Our conclusion, however, that several other provisions in Airoom's arbitration agreement are also unenforceable changes the calculus. We have recognized that courts are far less justified in modifying contractual language if doing so would be "tantamount to drafting a new contract." *Lee/O'Keefe Insurance Agency, Inc. v. Ferega*, 163 Ill. App. 3d 997, 1007 (1987); see also *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 457 (2007) (finding severance inappropriate where contractual provisions were "severely overbroad," such that "significant modification would be necessary to make them conform to legal standards of reasonableness"). We have cautioned courts against engaging in this practice too often, as it "discourag[es] the narrow and precise draftsmanship which should be reflected in written agreements." *Lee/O'Keefe*, 163 Ill. App. 3d at 1007. Notably, although Airoom defends the circuit court's authority to sever the punitive damages waiver, it does not argue that severance would be appropriate if other provisions of the arbitration agreement are also found to be unconscionable.

¶ 54    "[T]he fairness of the restraint[s] initially imposed is also a relevant consideration ***." *House of Vision, Inc. v. Hiyane*, 37 Ill. 2d 32, 39 (1967). We agree with Ms. Bain that the "cumulative effect of the various portions of [Airoom's] arbitration agreement is to deny the

consumer a fair hearing and a level playing field" and to ultimately "deprive the consumer of substantive remedies that should be available for full redress of her claims." Where, as here, the drafting party has structured an arbitration agreement that is designed to make a claim expensive to bring, to bar any full recovery, and to ensure that the public does not learn of adverse findings against the company, the modifications necessary to render the agreement enforceable cannot be considered minor. The arbitration agreement is unenforceable, and its unconscionable provisions cannot be severed.

¶ 55                                   IV. CONCLUSION

¶ 56     For all of the above reasons, the circuit court's order compelling arbitration is reversed, Ms. Bain's complaint is reinstated, and this matter is remanded for further proceedings consistent with this opinion.

¶ 57     Reversed and remanded.

---

**No. 1-21-1001**

---

| | |
|---|---|
| **Cite as:** | *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-12077; the Hon. Margaret Ann Brennan, Judge presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michelle Weinberg and Miriam Hallbauer, of Legal Aid Chicago, for plaintiff. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric D. Stubenvoll and John P. McCorry, of O'Hagan Meyer, LLC, of Chicago, for defendant. |

---