2023 IL App (1st) 221721

No. 1-22-1721

Opinion filed March 20, 2023

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BARBARA TURNER, as Attorney-in-Fact for Marvin Turner, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 2020 L 2462 |
| CONCORD NURSING AND REHABILITATION CENTER, LLC, d/b/a Aperion Care Oak Lawn, | ) ) ) ) | The Honorable Karen L. O'Malley, Judge, presiding. |
| Defendant-Appellant. | ) ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Lavin and Justice Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     Barbara Turner, as independent administrator of the estate of her uncle, Marvin Turner, sued Concord Nursing and Rehabilitation Care Center, doing business as Aperion Care Oak Lawn, under the Nursing Home Care Act, the Wrongful Death Act, and the Survival Act, alleging Marvin suffered and died due to Aperion's negligent care and treatment. Aperion answered the Wrongful Death and Survival Act claims and moved to dismiss and compel arbitration of the Nursing Home Care Act claim under an arbitration agreement that Marvin

signed two months before his death. The trial court denied Aperion's motion, finding the arbitration agreement unenforceable as a matter of law on (i) procedural unconscionability because Marvin had little choice but to accept the terms of the 120-page admissions packet, which included the arbitration agreement, and (ii) substantive unconscionability because the arbitration agreement limited damages to $250,000 and disallowed statutory attorney's fees and punitive damages.

¶ 2 Aperion argues the trial court erred in finding the arbitration agreement unenforceable, arguing (i) adequate consideration, (ii) Marvin's competence, (iii) the agreement was neither substantively nor procedurally unconscionable, and (iv) enforceability under the Federal Arbitration Act. Alternatively, Aperion asks that we sever from the remainder of the agreement provisions deemed unenforceable.

¶ 3 We affirm the trial court's finding that the agreement was procedurally unconscionable because Marvin had little choice in accepting the terms despite contrary language buried in the packet and substantively unconscionable because it deprived Marvin of his statutory attorney's fees and limited his damages to $250,000. Further, severance of the unenforceable provisions, which Aperion did not raise in the trial court, was not an available remedy.

¶ 4                                      Background

¶ 5 Marvin Turner, now deceased, resided at Aperion, a long-term care facility, between January 2016 and April 2020. Marvin had been diagnosed with multiple sclerosis and end-stage renal disease. He had numerous stays in the hospital between 2018 and 2020 for his underlying conditions and treatment of other ailments, including septic shock resulting from pressure sores and ulcers. In December 2019, doctors amputated Marvin's right leg above the knee due to an infected pressure wound on his ankle.

¶ 6        On February 24, 2020, Marvin was "readmitted" to Aperion on returning from the hospital. Aperion's admissions director, Diamond Walton, presented Marvin with its 120-page admissions packet and asked that he sign in 20 locations throughout the packet, including the rider, a three-page arbitration agreement. Relevant here, the arbitration agreement contained provisions as to costs, attorney's fees, and damages:

"5. In consideration for the execution of this agreement, Facility agrees to pay up to $3,000.00 of the Resident's Arbitration or Mediation costs, and out-of-pocket expenses for any claim brought against the Facility regardless of the outcome; the Resident shall have the right to demand non-binding mediation prior to arbitration; and the Resident shall have the right to choose when to initiate said proceedings. If non-binding mediation is elected but is unsuccessful at resolving all claims or controversy's [*sic*], then those unresolved matters shall be settled by binding arbitration.

6. The parties acknowledge and agree that with regard to any claim brought by a party to this Rider against the other party, shall be limited to actual out-of-pocket costs actually incurred PLUS an amount not to exceed $250,000.00 for any and all other damages. Such claims include but are not limited to the Facility for unpaid fees, or charges for damage to the facility, or a claim by, or on behalf of, a Resident, Resident Party, or by a Resident's Estate, Agent or Legal Representative, arising out of care or treatment received by the Resident while at said Facility.

7. Resident shall not be entitled to Statutory Attorney Fees, including those delineated in the Illinois Nursing Home Care Act and Missouri's 'Omnibus Nursing Home Act', and no Punitive Damages will be awarded to either Resident or Facility.

The attorneys for both Resident and Facility will be paid fees and costs per their own respective client agreements."

¶ 7        The arbitration agreement further provided the "health care arbitration agreement shall constitute an integral part of the Resident's underlying admission and/or continued residency; but *** is not a condition to the admission, or to the rendering of health care services."

¶ 8        Three days later, Turner filed a complaint as Marvin's attorney-in-fact alleging Aperion's negligent care of Marvin violated the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2020)), causing injury, including multiple stage two, three, and four pressure wounds, one of which resulted in amputation.

¶ 9        About a month after that, Marvin returned to the hospital due to a fever, altered mental status, and hypotension. He also had a high white blood cell count and ulcers on his left foot with necrosis of the bone and gangrene. Marvin went back to Aperion for a day before returning to the hospital for treatment of hypotension, hypoxemia, and acute septic shock. On April 14, 2020, the hospital discharged Marvin for hospice care at Turner's home, where he died within a few days.

¶ 10       Turner filed a first amended complaint as independent administrator of Marvin's estate, which she later amended, realleging negligence and violations of the Nursing Home Care Act (count I) and adding claims under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2020)) (count II) and the Survival Act (755 ILCS 5/27-6 (West 2020)) (count III).

¶ 11       Concord filed an answer denying the substantive allegations in counts II and III and moved to dismiss and compel arbitration on count I, the Nursing Home Care Act claim, under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2020)). Concord argued the arbitration agreement was enforceable and the allegations of Turner's complaint fell within

its scope. Turner responded that the arbitration agreement was invalid due to (i) procedural and substantive unconscionability, (ii) insufficiency of consideration, (iii) lack of requisite mental capacity, and (iv) deprivation of the protections of the Nursing Home Care Act.

¶ 12        Diamond Walton testified by deposition that an audit revealed the nursing home had lost or misplaced Marvin's original admissions documents, so on Marvin's readmission on February 24, 2020, she went to Marvin's room and spent up to an hour explaining the admissions packet to him. Marvin recognized her, and they joked as they usually did. She had no concerns about his ability to understand the agreement; if she had, she would have contacted Turner. Walton told him that he could have an attorney review the packet. Marvin had no questions and signed and dated the documents. (It is unclear from the record, but Marvin's signature, which occurs 20 times, appears to have been inserted via a computer program.)

¶ 13        Turner, also testifying by deposition, said she had Marvin's power of attorney and made all of his medical and financial decisions. (The power of attorney agreement stated that Marvin could continue making decisions for as long as he could.) Turner said that in February 2020 Marvin was confused; had difficulty reading, comprehending, and speaking; and could not sign his name. She acknowledged she was not in the room when Walton presented Marvin with the admissions packet nor had personal knowledge of what occurred or his condition that day.

¶ 14        After a hearing, the trial judge denied Aperion's motion to dismiss and compel arbitration for the reasons stated in open court. The parties submitted an agreed statement of facts as to that ruling, indicating the trial court relied on *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001, to hold the arbitration agreement to be procedurally and substantively unconscionable. Regarding procedural unconscionability, the court found the agreement contained a lengthy admissions packet and Marvin had little choice in accepting the documents if he wanted

readmittance. As to substantive unconscionability, the court found the agreement limited damages to $250,000 and prohibited statutory attorney's fees and punitive damages. Because the trial court denied Aperion's motion on conscionability, it did not address Turner's argument that Marvin lacked the capacity to enter into the arbitration agreement.

¶ 15                                      Analysis

¶ 16                               Standard of Review

¶ 17        We review the denial of a motion to dismiss and to compel arbitration under section 2-619 of the Code *de novo*. *Peterson v. Residential Alternatives of Illinois, Inc.*, 402 Ill. App. 3d 240, 244 (2010). We also review *de novo* an arbitration agreement's construction and invalidity for procedural or substantive unconscionability. *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22 (2006).

¶ 18                               Unconscionability

¶ 19        By adopting the Arbitration Act, our legislature placed arbitration agreements on equal footing with other contractual promises. See 710 ILCS 5/1 (West 2020) (providing arbitration agreement "is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract"). When a dispute arises within the terms of a valid arbitration agreement, "arbitration is mandatory," and "the trial court must compel it." *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1175 (2002).

¶ 20        Like other contracts, however, state law contract defenses may invalidate an arbitration agreement, including fraud, duress, or unconscionability. *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 18. Procedural unconscionability exists when, after considering all of the circumstances, a court determines disputed contract terms were "so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware [he or she] was agreeing

to [them]" and the plaintiff lacked bargaining power. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 100 (2006). Substantive unconscionability applies where the contract terms are so one-sided that they oppress or unfairly surprise an innocent party and create an overall imbalance in the obligations and rights imposed by the bargain and a significant cost-price disparity. *Kinkel*, 223 Ill. 2d at 28. A contract or clause may be declared unenforceable based on either procedural or substantive unconscionability or a combination of both. *Id.* at 21. We agree with the trial court's finding that the arbitration agreement was both procedurally and substantively unconscionable.

¶ 21                                  Procedural Unconscionability

¶ 22        Multiple factors surrounding Marvin's agreeing to the arbitration rider indicate procedural unconscionability. The parties agree Marvin had numerous health problems. He was hospitalized frequently between 2018 and 2020 for his underlying conditions and complications from pressure wounds, including amputation of part of a leg. Indeed, on February 24, the day Aperion presented him with the readmission packet, he arrived at the facility after a hospital stay. Walton testified she spent up to an hour with Marvin explaining the packet, which exceeded 120 pages of extensive details. Walton further stated that Marvin recognized her and they joked as usual. But this is not evidence that he understood the terms or to what he was agreeing. Additionally, Turner testified that in February 2020, Marvin was confused; had difficulty reading, comprehending, and speaking; and could not sign his name. And the record is silent as to how Marvin's signature got there since Walton testified that she could not recall.

¶ 23        To support its argument that the arbitration agreement was procedurally unconscionable, Aperion asserts the rider states, "the arbitration agreement is not a condition to the admission."

And at oral argument, Aperion's attorney acknowledged that Marvin would have been allowed to stay at the facility had he not signed the agreement. But the agreement also states that the arbitration agreement is "an integral part of the Resident's underlying admission and/or continued residency," and again, Walton could not recall explaining to Marvin that the arbitration agreement was optional. Moreover, in the trial court, Aperion did not contend that Marvin could have stayed at the facility had he declined to sign the 120-page packet. And given that (i) some 115 pages preceded the 3-page arbitration rider, apparently presented shortly after his return from the hospital, and (ii) the arbitration agreement stated it constituted "an integral part" of a resident's underlying admission and continued residency, it would have been reasonable for Marvin to conclude that he had to sign the agreement if he wanted to continue residing there.

¶ 24    For similar reasons, Aperion's contention on the option of attorney review fails. As noted, Marvin had multiple health issues, and according to his niece, she had noticed he was confused and experiencing difficulties reading and speaking.

¶ 25    Under these circumstances, we agree with the trial court's finding that the arbitration rider was procedurally unconscionable, considering the packet's bulk and detail, the pretense of attorney review, Marvin's general health and mental agility at the time of readmission, and the nature of the rider as an adhesion contract.

¶ 26                    Substantive Unconscionability

¶ 27    Although procedural unconscionability alone suffices, the evidence of substantive unconscionability also supports the trial court's decision.

¶ 28    Count I concerns violations of the Nursing Home Care Act. Section 3-602 provides "[t]he licensee shall pay the actual damages and costs and attorney's fees to a facility resident whose

rights *** are violated." 210 ILCS 45/3-602 (West 2020). The arbitration rider, however, provided that Marvin "shall not be entitled to Statutory Attorney Fees, including those delineated in the Illinois Nursing Home Care Act." Further, it limited his damages to $250,000.

¶ 29    Aperion contends the trial court erred because waiving attorney's fees, punitive damages, and the limitation on other damages comes within the province of the parties' freedom to contract. See *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*, 226 Ill. App. 3d 507, 512 (1992); *City of Springfield v. Ameren Illinois Co.*, 2018 IL App (4th) 170755, ¶ 38 (holding "[p]arties may contract away rights, even those of a constitutional or statutory nature"). Moreover, Aperion contends the terms were mutually binding and that Marvin received "extra consideration" for agreeing to them.

¶ 30    Regarding mutually binding terms, only Martin waived rights to statutory attorney's fees. Aperion contends it waived attorney's fees because the arbitration rider provided that "[t]he attorneys for both Resident and Facility will be paid fees and costs per their own respective client agreements." In comparison, the attorney's fee provision in the admissions contract provides "the Facility is entitled to all costs of collection of unpaid charges for the enforcement of this Agreement including court costs and reasonable attorneys' fees. Facility is also entitled to attorneys' fees in connection with the general enforcement of this Contract."

¶ 31    Aperion asserts the admission agreements and the arbitration rider conflict and, when a conflict exists between a general agreement and a rider to the agreement, the rider controls. See, *e.g.*, *Metro Inter-Insurance Exchange v. Anthony*, 1 Ill. App. 3d 612, 616 (1971) ("If there is any conflict between the provisions of the policy proper and the provisions of the attached rider or endorsement, the rider or endorsement will control."). We disagree that a conflict exists. The arbitration rider refers to the parties' "own respective client agreements" for the

amount and method of calculating attorney's fees and costs, not for who is responsible for paying them. The sole provision on Aperion's attorney's fees appears in the admission documents and permits Aperion to recover attorney's fees and costs. That language controls. Accordingly, the waiver of attorney's fees was not mutual.

¶ 32      Furthermore, although the parties agreed to limit damages to $250,000, that provision more significantly adversely affects Martin, as Aperion is highly unlikely to incur damages approaching that amount against Marvin. This creates a severe cost-price disparity between the parties supporting an unconscionability finding. *Kinkel*, 223 Ill. 2d at 28.

¶ 33      *Bain*, 2022 IL App (1st) 211001, on which the trial court relied, is instructive. *Bain* involved a contract between a homeowner and a home remodeling company. *Id.* ¶ 4. The contract contained an arbitration clause barring the homeowner from recovering statutory attorney's fees and punitive damages under the Consumer Fraud Act. *Id.* ¶¶ 32-33. In finding the arbitration agreement unconscionable, we reasoned that the Consumer Fraud Act specifically provided for statutory attorney's fees and punitive damages. *Id.*

¶ 34      Moreover, we noted that the Consumer Fraud Act contained an express antiwaiver provision, providing that " '[a]ny waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable.' " *Id.* ¶ 33 (quoting 815 ILCS 505/10c (West 2018)). We held that, because an arbitrator could not award Bain either attorney's fees or punitive damages, the agreement impermissibly limited the homeowner's recovery and thereby was unconscionable for contravening clear statutory language. *Id.* ¶ 37.

¶ 35      Aperion argues that the Nursing Home Care Act does not contain antiwaiver provisions relating to statutory attorney's fees or provide for punitive damages. Although the Act does not mention punitive damages, our supreme court has held that plaintiffs who sue under the

Nursing Home Care Act may " 'recover common law punitive damages upon proof of willful and wanton misconduct on the part of defendant.' " *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill. 2d 495, 502 (2011) (quoting *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291, 300 (1999)). Further, section 2-603 of the Act expressly states that residents may recover "actual damages and costs" and attorney's fees. By limiting Marvin to $250,000 in damages and prohibiting an arbitrator from awarding him attorney's fees, as in *Bain*, the agreement contravenes Illinois law and is substantively unconscionable.

¶ 36                                   Consideration

¶ 37        We also disagree with Aperion's contention that "extra consideration" supports upholding Marvin's waiver of attorney's fees and actual damages.

¶ 38        "Consideration" comprises " 'bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance.' " *Carter*, 2012 IL 113204, ¶ 23 (quoting *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 487 (1997), citing Restatement (Second) of Contracts § 71 (1981)). An act or promise beneficial to one party while disadvantageous to the other satisfies consideration to support a contract. *Id.* Thus, the enforceability of a plaintiff's promise to arbitrate, rather than to litigate, and forgo his right to statutory attorney's fees depends on whether the defendant suffered a detriment or whether the plaintiff received a benefit in exchange for that promise.

¶ 39        *Calusinski v. Alden-Poplar Creek Rehabilitation & Health Care Center, Inc.*, 2022 IL App (1st) 220508, addressed the issue. In *Calusinski*, the plaintiff, acting as power of attorney for his mother, signed an arbitration agreement with the defendant nursing home when his mother was admitted. *Id.* ¶ 4. Under its terms, residents waived their right to statutory attorney's fees under the Nursing Home Care Act. The agreement also permitted the nursing home to litigate

claims against the resident for nonpayment in a court of law. In contrast, residents had to arbitrate claims against the nursing home. *Id.* ¶ 14. The agreement also vested defendant with the exclusive right to choose a substitute mediator or arbitrator under certain conditions. *Id.* Lastly, defendants would pay " 'up to a maximum of $2,000' " for the " 'mediator and/or arbitrator's fees and other reasonable costs associated with mediation and arbitration,' " but additional costs for mediation or arbitration would be " 'borne equally by the parties,' " and each party was " 'responsible for their own attorney fees and costs.' " *Id.*

¶ 40      In affirming that the agreement was unenforceable, this court found inadequate consideration to support plaintiff's waiver of the right to statutory attorney's fees. *Id.* ¶ 16. As to the defendant's agreement to pay the $2000 for mediation and arbitration costs, "plaintiff could easily incur more than that amount in attorney fees alone." *Id.* ¶ 14.

¶ 41      Aperion argues that terms here differ markedly from those in *Calusinski*. First, unlike *Calusinski*'s unilateral promise to arbitrate, Aperion's agreement contained a mutual promise to arbitrate all disputes. See *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 230 (2009); *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1198 (2000). Second, unlike the clause in *Calusinski* that gave defendant unilateral authority to select the arbitrator or mediator, the arbitration agreement prescribes that the arbitrator be mutually selected and agreed to by the parties and vests Marvin with sole authority to demand nonbinding mediation before arbitration. Third, Aperion will pay up to $3000 of Marvin's arbitration or mediation costs and out-of-pocket expenses for a claim brought against Aperion, regardless of the outcome, $1000 higher than the amount in *Calusinski*.

¶ 42      Tellingly, Marvin's arbitration rider capped his damages at $250,000, which could be considerably less than the damages awarded in a wrongful death case. But, as the *Calusinski*

court noted, a plaintiff's attorney's fees alone could easily exceed that amount. Because of the limitation on damages and that only Marvin waived his right to attorney's fees, the agreement was not supported by adequate consideration. *Calusinski*, 2022 IL App (1st) 220508, ¶ 14. As to paying $1000 more than the defendant in *Calusinski*, the difference is inconsequential.

¶ 43    Because we affirm, we need not address the parties' alternative arguments concerning the arbitration rider's enforceability.

¶ 44                                   Severability

¶ 45    Aperion wants unenforceable provisions severed and the remainder of the rider enforced.

¶ 46    Aperion forfeited the severability issue by failing to present it in the trial court. If one party neglects to raise an argument before the trial court, the other party cannot address or present evidence in rebuttal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("[I]ssues not raised in the trial court are deemed waived and may not be raised for the first time on appeal."). Accordingly, we may bar a party from springing an argument after the presentation of evidence has closed. *Daniels v. Anderson*, 162 Ill. 2d 47, 59 (1994).

¶ 47    Forfeiture aside, we have recognized that courts are far less justified in modifying contractual language where it would be "tantamount to drafting a new contract." *Lee/O'Keefe Insurance Agency, Inc. v. Ferega*, 163 Ill. App. 3d 997, 1007 (1987); see also *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 457 (2007) (finding severance inappropriate when contractual provisions "severely overbroad," so "significant modification would be necessary to make them conform to legal standards of reasonableness"). We have cautioned courts against engaging in this practice, as it "discourag[es] the narrow and precise draftsmanship which should be reflected in written agreements." *Lee/O'Keefe*, 163 Ill.

App. 3d at 1007. "[T]he fairness of the restraint[s] initially imposed is [also] a relevant consideration \*\*\*." *House of Vision, Inc. v. Hiyane*, 37 Ill. 2d 32, 39 (1967).

¶ 48    Aperion, the drafting party, structured the rider to make a claim against it expensive to bring and bar a full recovery of attorney's fees and costs. Under these circumstances, the modifications to render the agreement enforceable cannot be viewed as minor.

¶ 49    Affirmed.

*Turner v. Concord Nursing & Rehabilitation Center, LLC*, **2023 IL App (1st) 221721**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-2462; the Hon. Karen L. O'Malley, Judge, presiding. |
| **Attorneys for Appellant:** | Ronald E. Neroda and Rain Montero, of Cassiday Schade LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jonathan W. Young, of Ferrell Young, LLC, of Chicago, for appellee. |