2025 IL App (1st) 241458-U

No. 1-24-1458

Order filed June 17, 2025

Second Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| GLORIA SHERIDAN GELLER, as Independent Administrator of the Estate of MARK GELLER, deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | No. 22 L 10057 |
| | ) | |
| v. | ) | Honorable |
| | ) | Patrick T. Stanton, |
| UBER TECHNOLOGIES, INC. and RASIER, LLC, | ) | Judge, presiding. |
| | | |
| Defendants-Appellants. | | |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We reverse the circuit court's denial of defendants' motion to compel arbitration because the parties' arbitration agreement delegates the question of arbitrability to the arbitrator. We remand this matter for further proceedings consistent with this order.

¶ 2   Defendants Uber Technologies, Inc. and Rasier, LLC (collectively "Uber") appeal from

the circuit court's denial of their motion to compel arbitration of plaintiff Gloria Sheridan Geller's

(Sheridan) wrongful death claims. Sheridan's claims arise out of the death of her husband, Mark

Geller, in an automobile accident. On appeal, Uber contends that the circuit court exceeded its authority because a delegation clause in Sheridan's arbitration agreement with Uber requires the arbitrator, not the court, to decide whether Sheridan's wrongful death claims fall within the scope of the arbitration agreement. For the following reasons, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4     Sheridan sued Uber and the estate of a deceased Uber driver, Ejaz Rahore, for negligence. Sheridan alleges that on April 19, 2022, her husband Mark requested a ride through Uber's rideshare application and Rathore picked him up. While driving on the Stevenson Expressway, Rathore lost control of the vehicle and crashed, killing him and Mark. Sheridan's complaint alleges survival claims on behalf of Mark's estate and Sheridan's own claims under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)) for the loss of her husband.

¶ 5     Uber is a rideshare technology platform that connects drivers to customers through an application (Rider App). As a condition of using the Rider App, customers must create an account and accept Uber's terms of use. When Uber updates the terms of use, customers must accept the updated terms before using the Rider App. The terms of use include an arbitration agreement that requires customers to arbitrate "any claim" they have against Uber.

¶ 6     Uber filed a motion to compel arbitration, which argued that when Mark and Sheridan each independently signed up for the Rider App, they both agreed to terms of use that required arbitration of any claims they had against Uber.

¶ 7     Sheridan did not dispute that such an arbitration agreement existed in Uber's terms of use, but she argued that the arbitration agreement was unconscionable. Sheridan also contended that

Mark's arbitration agreement with Uber did not bind her personally or as the administrator of his estate.

¶ 8    Uber's reply argued that the arbitration agreement was not unconscionable. Uber further contended that because Sheridan's wrongful death claims were her own claims for the loss of her husband (as opposed to claims belonging to the estate), Sheridan's arbitration agreement required her to arbitrate those claims.

¶ 9    Finally, Uber highlighted that Sheridan's arbitration agreement included a delegation clause as follows:

> "The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel. If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue."

Uber contended that, pursuant to this delegation clause, the arbitrator, not the circuit court, had to decide whether Sheridan's wrongful death claims fell within the scope of her arbitration agreement.

¶ 10    The circuit court held oral argument, but not an evidentiary hearing, on Uber's motion to compel arbitration. The court granted Uber's motion as to the estate's survival claims but denied the motion as to Sheridan's wrongful death claims. The court first determined that Uber's terms of use were a valid contract that included an arbitration agreement. The court then found that the estate's survival claims fell within the scope of Mark's arbitration agreement. However, the court concluded that Sheridan's wrongful death claims did not fall within the scope of her arbitration

agreement because those claims did not arise out of Sheridan's use of Uber; rather, they arose out of Mark's use of Uber. The court did not address the delegation clause. Uber filed a timely interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 11                                                    II. ANALYSIS

¶ 12     Uber contends that, pursuant to the delegation clause, the circuit court had no authority to decide whether Sheridan's wrongful death claims fell within the scope of her arbitration agreement. Uber argues that only the arbitrator has authority to decide that issue.

¶ 13     Uber appeals pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). See *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001) (order compelling arbitration "is injunctive in nature and subject to interlocutory appeal under paragraph (a)(1) of [Rule 307]."). "Generally, where an interlocutory appeal is brought under Rule 307(a)(1), the only issue is whether there was a showing sufficient to sustain the circuit court's order granting or denying the motion to compel arbitration." *Gaines v. Ciox Health, LLC*, 2024 IL App (5th) 230565, ¶ 24. When the circuit court denies a motion to compel arbitration "without an evidentiary hearing, and solely on the basis of documentary evidence, our standard of review is *de novo*." *Schmitz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 405 Ill. App. 3d 240, 244 (2010).

¶ 14                                                    A. Forfeiture

¶ 15     Sheridan first argues that we should not consider Uber's argument that the delegation clause in her arbitration agreement controls because Uber's arguments in the circuit court focused on Mark's arbitration agreement, not Sheridan's. Sheridan contends that Uber did not raise *her* arbitration agreement until its reply in support of its motion to compel arbitration.

¶ 16     We disagree. Uber first mentioned Sheridan's arbitration agreement in the initial motion to compel arbitration and attached a copy of her arbitration agreement to that motion. It is true that Uber's *focus* shifted to Sheridan's arbitration agreement in the reply, but Uber did not reveal the existence of her arbitration agreement for the first time in its reply and does not raise that issue for the first time on appeal. Moreover, the circuit court heard argument regarding Sheridan's arbitration agreement. That is how the court found that Sheridan's wrongful death claims were not within the scope of her arbitration agreement. Accordingly, the issue of Sheridan's arbitration agreement is properly before us. See, *e.g.*, *Moore v. Board of Education of City of Chicago*, 2016 IL App (1st) 133148, ¶ 36 (the reviewing court may consider issues raised in the circuit court that are related to the judgment being appealed).

¶ 17                                    B. Unconscionability

¶ 18     Sheridan contends that her arbitration agreement with Uber, including the delegation clause, is unconscionable.

¶ 19     A delegation clause requires the arbitrator to decide certain threshold issues "such as whether [an arbitration] agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010).

¶ 20     In this case, the delegation clause delegates the issue of unconscionability to the arbitrator. It provides that "[t]he Arbitrator shall also be responsible for determining *** whether the Terms are *** unconscionable." However, the United States Supreme Court has indicated that a delegation clause cannot delegate the general validity of an arbitration agreement to the arbitrator. In *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), a delegation clause provided that "without limitation, disputes arising out of or related to the interpretation or application of the Arbitration

Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement *** *shall be decided by an arbitrator and not by a court or judge*." (Emphasis in original.) *Id.* at 146. The Supreme Court found that when a party challenges the validity of an arbitration agreement, the "court *must* consider the challenge before ordering compliance" with the arbitration agreement even if a delegation clause purports to reserve that issue for the arbitrator. (Emphasis in original.) *Id.* at 151. That rule applies to unconscionability as well because if a court finds that an arbitration agreement as a whole is unconscionable, then it cannot enforce a delegation within that arbitration agreement. See *Turner v. Concord Nursing & Rehabilitation Center, LLC*, 2023 IL App (1st) 221721, ¶ 20 (unconscionability "may invalidate an arbitration agreement"). Therefore, we will resolve Sheridan's unconscionability arguments and will not delegate unconscionability to the arbitrator despite what the delegation clause says. We must address unconscionability first because if we find that Sheridan's arbitration agreement is unconscionable, then we cannot enforce the delegation clause as Uber requests.

¶ 21 An arbitration agreement is a contract and "may be invalidated by a state law contract defense of *** unconscionability." *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶ 18. A contract may be unenforceable if it is procedurally or substantively unconscionable. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011) (citing *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22 (2006)). Sheridan argues both theories of unconscionability.

¶ 22                          1. Procedural Unconscionability

¶ 23 Sheridan contends that the arbitration agreement is procedurally unconscionable. Procedural unconscionability refers to impropriety during the formation of a contract that deprives

a party of meaningful choice. *Kinkel*, 223 Ill. 2d at 23 (quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill.App.3d 980, 989-90 (1980)). Courts consider all of the circumstances surrounding the formation of the contract, such as "whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* Procedural unconscionability exists when the contractual terms are "so difficult to find, read, or understand" that a party cannot reasonably be expected to understand them. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 100 (2006).

¶ 24    We find that Sheridan's arbitration agreement is not procedurally unconscionable. The first page of Uber's terms of use feature a notice in bold all-capital type that the terms include an arbitration provision "that requires [Sheridan] to resolve all disputes with Uber *** through final and binding arbitration." The three-page arbitration agreement itself starts on the second page of Uber's terms of use with bold headings. It provides: "By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement." The arbitration agreement is conspicuous and nothing is hidden in a maze of fine print. See *Phoenix Insurance Co.*, 242 Ill. 2d at 60; *cf. Kinkel*, 223 Ill. 2d at 27 (arbitration agreement unconscionable where it provided no terms regarding costs of arbitration, and only stated that such information was available upon request). Furthermore, Sheridan had reasonable opportunities to review the terms when she agreed to them on two separate occasions: when she first signed up for an Uber account and again when Uber updated the terms of service. See *id.* Consumers have a duty to read contracts to which they agree. See *Reazuddin v. Gold Coast Exotic Imports, LLC*, 2022 IL App (1st) 210763-U, ¶ 76. Sheridan may or may not have actually read the terms of use when she signed up for the Rider App or when

she agreed to the updated terms of use, but the arbitration agreement is not so confusing or obscured as to render it procedurally unconscionable.

¶ 25    Relatedly, Sheridan argues that the arbitration agreement is a contract of adhesion. A contract of adhesion is a nonnegotiable form agreement that one party "offers" on a take-it-or-leave-it basis. *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 15.   However, contracts of adhesion are not always procedurally unconscionable. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 72-73 (2011); *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 152-53 (2006). For a contract of adhesion to be unconscionable, the party "offering" the contract of adhesion must commit some form of wrongdoing such as "coercion or overreaching" or concealing critical information. (Internal quotations omitted.) *Zuniga*, 2021 IL App (1st) 201264, ¶¶ 15-18 (quoting *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 233 (2008)). This court has held that an arbitration agreement is not procedurally unconscionable "merely because a business sought to impose it through a standardized, take-it-or-leave-it contract over which the consumer had no ability to negotiate." *Id.* ¶ 15.

¶ 26    In this case, Sheridan's arbitration agreement with Uber is a contract of adhesion because Uber "offered" it on a nonnegotiable, take-it-or-leave-it basis. See *id.* However, Sheridan fails to show that Uber committed any impropriety, coercion, or overreaching as to render the arbitration agreement procedurally unconscionable. *Cf. id.* ¶ 32 (finding contract of adhesion unconscionable where a baseball ticket bound the ticketholder "to an extensive eight-paragraph arbitration provision that was not provided to her"); *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 353 (2009) (finding rental agreement unconscionable where the property manager prevented plaintiff from reading terms of the agreement and rushed the plaintiff into signing it). On the contrary, Uber

displayed the terms of use, including the arbitration agreement, to Sheridan when she signed up for the Rider App and again when it was updated. Sheridan was free to reject the terms of use and use a different rideshare service instead. See *Kinkel,* 223 Ill. 2d at 26. Accordingly, we find that the arbitration agreement is not procedurally unconscionable.

¶ 27                                   2. Substantive Unconscionability

¶ 28    Sheridan also argues that the arbitration agreement is substantively unconscionable. A contract is substantively unconscionable when its terms "are so one-sided as to oppress or unfairly surprise an innocent party." (Internal quotations omitted.) *Phoenix Insurance Co.*, 242 Ill. 2d at 60. An arbitration agreement is oppressively one-sided when it requires only one party to arbitrate (see *Hwang v. Pathway LaGrange Property Owner, LLC*, 2024 IL App (1st) 240534, ¶ 20 (collecting cases)) or where the arbitration agreement limits the recovery of damages (*Turner*, 2023 IL App (1st) 221721, ¶ 35).

¶ 29    We find that Sheridan's arbitration agreement is not substantively unconscionable. The arbitration agreement requires both parties to arbitrate disputes and does not limit the damages that Sheridan may recover.

¶ 30    Sheridan argues that the arbitration agreement unfairly surprised her because (1) Uber prevented her from using the Rider App unless she consented to the terms of use and (2) the arbitration agreement is "lost within a vast number of pages of text." Being blocked from using the Rider App without first agreeing to the terms of use is irrelevant to the question of substantive unconscionability. Substantive unconscionability "concerns the *actual terms* of the contract and examines the relative fairness of the obligations assumed." (Emphasis added.) *Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 121 (2003). Furthermore, Sheridan cannot reasonably claim

that she was unfairly surprised by the arbitration agreement when she had ample opportunity to review the terms of use. As we discussed above, the arbitration agreement is not hidden in "a vast number of pages of text." The arbitration agreement is not hidden or inaccessible. While Sheridan characterizes these arguments as addressing substantive unconscionability, they are more like the issues of procedural unconscionability we have already addressed above.

¶ 31     Sheridan also argues the arbitration agreement deprives her of the right to seek judicial redress. However, our supreme court has rejected the argument that an arbitration agreement is unconscionable on that basis. *Melena*, 219 Ill. 2d at 151; see *e.g.*, *City of Springfield v. Ameren Illinois Co.*, 2018 IL App (4th) 170755, ¶ 38 ("Parties may contract away rights, even those of a constitutional or statutory nature."). The court held that the right to "a judicial forum" applies only after the plaintiff establishes that litigation should proceed before a court. *Melena*, 219 Ill. 2d at 151. If the claims are properly before an arbitrator pursuant to a valid arbitration agreement, there is no such right. *Id.*

¶ 32     Finally, Sheridan argues that Uber did not provide consideration for the arbitration agreement. Consideration is an element of contract formation, so this argument concerns whether a contract exists, not whether the contract is unconscionable. See *id*. Moreover, when "an arbitration clause is contained within a larger agreement, the consideration for the agreement as a whole is sufficient to support the subsidiary arbitration clause as well." *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, ¶ 45. Sheridan does not dispute that there was consideration for her agreement to Uber's terms of use. Therefore, we reject her argument that Uber had to provide additional consideration to support the arbitration agreement contained within those terms of use. See *id.*

¶ 33                                B. Delegation

¶ 34     Having concluded that Sheridan's arbitration agreement with Uber is not unconscionable, we now consider whether to enforce the agreement's delegation clause as Uber requests. Uber argues that pursuant to the delegation clause, the circuit court did not have authority to decide whether Sheridan's wrongful death claims fell within the scope of her arbitration agreement. Uber maintains that the delegation clause requires the arbitrator to decide that issue.

¶ 35     Sheridan's arbitration agreement provides that "the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ('FAA'), will govern its interpretation." Under the FAA, "parties can agree to arbitrate gateway questions of arbitrability, such as whether *** whether their agreement covers a particular controversy." (Internal quotations omitted.) *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019). If an arbitration agreement delegates issues of arbitrability to an arbitrator, a court may not decide those issues. *Id.*

¶ 36     In this case, the delegation clause provides that "[t]he Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable ***. If there is a dispute about whether this Arbitration Agreement *** applies to a dispute, you and Uber agree that the arbitrator will decide that issue." Here, there is a dispute about whether the arbitration agreement applies to Sheridan's wrongful death claims. Uber argues that the arbitration agreement applies because it covers *all* of Sheridan's claims, including her wrongful death claims. Sheridan contends that the arbitration agreement does not apply to her wrongful death claims for a variety of reasons, including the fact that those claims do not arise out of her own use of Uber. The delegation clause unambiguously provides that the arbitrator must resolve this dispute of arbitrability. The circuit court had no authority to find that Sheridan's wrongful

death claims do not fall within the scope of her arbitration agreement with Uber. The delegation clause makes clear that only the arbitrator can resolve that issue at this stage, and we must enforce the delegation clause as written. See *id.*

¶ 37     United States Supreme Court authority mandates this conclusion. The Court has held that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator *** a court possesses no power to decide the arbitrability issue." *Schein*, 586 U.S. at 68. When a "contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Coinbase, Inc.*, 602 U.S. at 152. In this case, Sheridan has not successfully challenged the delegation provision, so we must send all arbitrability disputes to arbitration. See *id.*

¶ 38     Sheridan argues that her late husband's arbitration agreement with Uber does not bind her as the administrator of his estate. That may be true (see *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶ 60), but that is beyond the question presented to this court. The question here is *who decides* whether Sheridan's claims for wrongful death fall within the scope of *her* arbitration agreement with Uber. The delegation clause answers that question clearly: the arbitrator decides.

¶ 39     Sheridan also contends that her wrongful death claims are unrelated to her use of the Rider App. This argument essentially contends that Sheridan's wrongful death claims fall outside the scope of the arbitration agreement. See *Schein*, 586 U.S. at 65. The delegation clause requires the arbitrator to resolve that dispute. Moreover, *Schein* expressly rejects courts' attempts to "short-circuit the [arbitration] process and decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.' " *Id.* at 65,

71. The FAA does not include such exceptions and we may not create "our own exceptions to the statutory text." *Id.* at 70.

¶ 40    Sheridan further argues that the arbitration agreement does not apply to her because she is a party to this case only in a representative role as administrator of Mark's estate. We disagree. The wrongful death claims belong to Sheridan individually and she is the plaintiff on those claims. See *Carter*, 2012 IL 113204, ¶ 33.

¶ 41    We hold that Sheridan's arbitration agreement with Uber is not unconscionable and its delegation clause unambiguously delegates the question of arbitrability to the arbitrator. "[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 69. Therefore, the arbitrator must decide whether Sheridan's wrongful death claims fall within the scope of her arbitration agreement.

¶ 42    Finally, we note that the procedural history of this case has produced somewhat contradictory outcomes. Uber accepted the circuit court's ruling that the estate's survival claims fell under the scope of Mark's arbitration agreement with Uber even though Mark's agreement contained essentially the same delegation clause as Sheridan's agreement. Yet in this appeal, Uber argues that, pursuant to the delegation clause, the circuit court had no authority to decide whether Sheridan's wrongful death claims fall within the scope of her arbitration agreement. In our view, Uber has taken inconsistent positions on what authority the circuit court has pursuant to the delegation clauses. However, neither party has appealed the circuit court's ruling with respect to the survival claims, so we are unable to reconcile that ruling with our ruling in this appeal.

¶ 43                                III. CONCLUSION

¶ 44    For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter for further proceedings consistent with this order.

¶ 45    Reversed and remanded.