2024 IL App (1st) 240534

SIXTH DIVISION
October 11, 2024

No. 1-24-0534

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JOAN HWANG, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County |
| | ) | |
| PATHWAY LaGRANGE PROPERTY OWNER, LLC, | ) | No. 2023-L-007800 |
| d/b/a Aspired Living of LaGrange, and JOHN DOE, | ) | |
| | ) | |
| | ) | The Honorable |
| Defendants | ) | Nichole C. Patton, |
| | ) | Judge Presiding. |
| (Pathway LaGrange Property Owner, LLC, d/b/a Aspired | ) | |
| Living of LaGrange, Defendant-Appellant). | ) | |
| | ) | |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Justices Hyman and C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Arbitration clauses in adhesion contracts are commonplace in today's consumer marketplace. Yet sometimes "mutually binding" arbitration clauses are in reality so one-sided as to be illusory. For example, the arbitration agreement at issue here purports to impose mutually binding obligations to arbitrate on both the consumer and business, yet it exempts from arbitration the claims that the business will most likely have against the consumer, so that its practical effect is that the consumer must arbitrate all of her claims against the business while the business may

seek relief in court on all of its likely claims against the consumer. This, along with other substantively unconscionable terms, renders the arbitration agreement as a whole substantively unconscionable. Therefore, we affirm the circuit court's decision to deny the defendant's motion to compel arbitration.

¶ 2                                I. BACKGROUND

¶ 3      In 2023, plaintiff Joan Hwang was a resident of Aspired Living, an assisted living facility located in La Grange, Illinois, that is owned by defendant Pathway La Grange Property Owner, LLC (Aspired). On February 2, 2023, as Hwang was walking down a hallway, an unnamed Aspired employee (John Doe) opened a door, striking Hwang and knocking her to the ground. Hwang, who was 90 years old at the time, sustained injuries as a result, including a fractured pelvis.

¶ 4      On August 4, 2023, Hwang filed a five-count complaint against Aspired and John Doe in the circuit court, alleging violations of the Nursing Home Care Act (Act) (210 ILCS 45/1-101 *et seq.* (West 2022)), negligence, and premises liability.

¶ 5      On November 6, 2023, Aspired filed its motion to dismiss complaint and compel arbitration, pursuant to section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2022)). Aspired asserted that on July 18, 2022, Hwang entered into a residency and services agreement with Aspired, which had a number of attachments, including an arbitration agreement. The arbitration agreement, which was separately signed by both parties, states in relevant part:

> "The Parties agree that any and all disputes *(except rent disputes or an action for involuntary transfer or discharge or eviction)* between: a) the Resident or his/her spouse, Responsible Party, heirs or assigns; and b) the Community Parties [Aspired] or their affiliates, officers, directors, agents, license holders, managers, or employees shall be decided by arbitration in accordance with this Agreement. Therefore, all other claims or

2

controversies, except where otherwise prohibited by law, arising out of or in any way relating to the residency and services agreement, the Resident's stays at the Community, the services rendered for any condition, and any dispute arising out of the diagnosis, treatment, or care of the Resident, including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. THE PARTIES TO THIS AGREEMENT FURTHER UNDERSTAND THAT CLAIMS, INCLUDING MALPRACTICE CLAIMS, CANNOT BE BROUGHT IN A LAWSUIT IN COURT BEFORE A JUDGE OR JURY AND THAT A JURY WILL NOT DECIDE THEIR CASE.

\*\*\*

The Arbitrator is the sole decision maker and is empowered and shall resolve all disputes including without limitation any disputes as to the making, validity, enforceability, scope, interpretation, voidability, unconscionability, preemption, and/or waiver of this Agreement or underlying residency and services agreement because the parties intend to resolve all disputes *other than payment disputes* without involving the court system.

\*\*\*

The arbitrator's fee and costs associated with the arbitration shall be divided equally among the parties. The parties shall bear their own attorneys' fees and costs and hereby expressly waive any right to recover attorney fees or costs, actual or statutory.

The arbitration proceeding shall remain confidential in all respects, including the Demand for Arbitration, all arbitration filings, deposition transcripts, documents produced or obtained in discovery, or other material provided by and exchanged between the parties and the arbitrator's findings of fact and conclusions of law. **** Further, the parties to the arbitration also agree not to discuss the amount of the arbitration award or any settlement, the names of the parties, or the name/location of the Residence except as required by law. ***

The parties acknowledge and agree that with regard to any claim brought by a party to this Agreement against the other party, [sic] shall be limited to actual out-of-pocket costs actually incurred PLUS an amount not to exceed $250,000 for any and all damages. Punitive damages shall not be awarded. Such claims include but are not limited to a claim by Community Parties for unpaid fees or charges, or a claim by, or on behalf of, a Resident *** arising out of the care or treatment received by the Resident or the Resident's occupancy or presence at the Community, including, without limitation, claims for medical negligence.

***

In the event a court having jurisdiction finds any term or portion of this Agreement unenforceable, that portion shall not be effective and the remainder of this Agreement shall remain effective.

***

You acknowledge that you have been encouraged to discuss this Agreement with an attorney. By signing below you acknowledge that you have reviewed this Agreement and understand it." (Emphasis added in italics.)

4

Aspired argued that because Hwang had entered into a "valid and enforceable agreement to arbitrate," her "claims must be dismissed and compelled to arbitration."

¶ 6    Hwang responded that the arbitration agreement was unenforceable because it was both procedurally and substantively unconscionable. She argued that the arbitration agreement was procedurally unconscionable because it constituted several pages of the "extremely voluminous" 75-page residency and services agreement and because she entered into the agreement when she was 89 years old without the benefit of attorney review on the day before she was scheduled to be admitted to the facility. She argued that the arbitration agreement was substantively unconscionable because it limited her ability to recover attorneys' fees and capped the damages she could recover and because its confidentiality clause allowed Aspired "to have access to far more information, including previous discovery and precedents, than [Hwang] and impermissibly allow[ed] for [Hwang] to be placed at a disadvantage." Taken together, these provisions made the agreement as a whole substantially beneficial to Aspired and, therefore, one-sided in its favor. Hwang also argued that the arbitration agreement was unenforceable as a matter of law because she did not receive any additional consideration for waiving her statutory right to attorneys' fees under the Act.

¶ 7    On December 20, 2023, Aspired filed a reply, arguing that Hwang delegated her claims of unconscionability, so they must be decided by an arbitrator. Alternatively, it argued that the arbitration agreement was not procedurally or substantively unconscionable. In addition, it argued for the first time that because "Aspired Living is an Assisted Living Facility under 210 ILCS 9/5 *et seq.* and 77 Ill. Admin Code 295.200" and "not a skilled nursing home," the Act does not apply and therefore Hwang could not rely on the punitive damages and attorney fees she could be entitled to thereunder to establish substantive unconscionability. Finally, Aspired argued that if the court

found a provision of the arbitration agreement unenforceable, then it should sever that provision and uphold the rest.

¶ 8 The circuit court denied Aspired's motion to dismiss and to compel arbitration. It found that because "[t]here is no arbitration without a valid contract to arbitrate," it needed to determine whether a valid contract to arbitrate existed before referring the matter to arbitration.

¶ 9 First, the court found that the arbitration agreement lacked the consideration necessary to form a valid contract because Hwang received no benefit and Aspired suffered no detriment by signing the arbitration agreement. For the sake of "completeness," the court then went on to address the issue of unconscionability and found the arbitration agreement procedurally unconscionable. It stated that the "the residence and services agreement [Hwang] signed is seventy-five pages long, including sixteen attachments," and that the arbitration agreement consisted of "seventeen paragraphs separated into three sections of mostly dense and confusing language," including "sentences stretching over several lines." The court found that the arbitration agreement "highlight[ed] the lack of bargaining power on the side of [Hwang] since it was apparent at the time of signing that unless [Hwang] signed the Arbitration Agreement she would not have been admitted." The court said that Hwang was "in need of admission to [Aspired's] facility and was presented with the voluminous adhesion contract *** without any realistic opportunity to consult an attorney."

¶ 10 The court also found the arbitration agreement substantively unconscionable. It stated that the agreement (1) contained a waiver of any right to recover attorney fees, (2) divided arbitration fees and costs equally among the parties, (3) required the arbitration proceeding to remain confidential, (4) limited the damages award to $250,000, and (5) excluded punitive damages. The court stated that while many of the provisions were "seemingly applicable to both parties, ***

upon closer look, it is clear that they strongly benefit [Aspired] at the expense of the resident." The court found that disputes regarding payment, where Aspired would be the likely plaintiff, were exempt from arbitration. In addition, the court found the requirement that the arbitration proceedings remain confidential in all respects "contributes to the substantive unconscionability of the contract by ensuring that none of [Aspired's] potential opponents will have access to precedent while, at the same time, [Aspired] accumulates a wealth of knowledge." Finally, the court found that the exclusion of punitive damages, "an important deterrent and tool of public policy[,]" represented Aspired's "attempt to avoid responsibility for injuries caused to residents by [Aspired's] willful and wanton conduct." It found this provision "contravene[d] the public policy aimed at protecting vulnerable residents of long-term facilities from abuse" and "create[d] a one-sided benefit for [Aspired]." Ultimately, the trial court refused to sever the offending provisions from the arbitration agreement, concluding that doing so would be "tantamount to drafting a new contract."

¶ 11    While the court acknowledged Aspired's argument that it was not a nursing home, and thus not subject to the requirements of the Act, it said that Aspired "did not seek dismissal on these grounds" and in fact "extensively relied on the case law allowing arbitration of the [Illinois] Nursing Home Care Act claims." In any event, the court found that "resolution of the issue of whether [Aspired] is subject to the Nursing Home Care Act" was not "outcome determinative" and reasoned that if Aspired "wish[ed] to pursue this argument, it could do so via a properly filed motion to dismiss at a later stage."

## II. JURISDICTION

¶ 12    We have jurisdiction to hear this appeal under Illinois Supreme Court Rule 307(a)(1) (Nov. 1, 2017) (allowing an appeal to be taken from an interlocutory order of court "granting, modifying,

refusing, dissolving, or refusing to dissolve or modify an injunction"). *Menard County Housing Authority v. Johnco Construction, Inc.*, 341 Ill. App. 3d 460, 463 (2003) ("A motion to compel arbitration is treated as a complaint for injunctive relief, and a denial of that motion is reviewed pursuant to Supreme Court Rule 307(a)(1) [citation].").

¶ 13                                                 III. ANALYSIS

¶ 14                                            A. Unconscionability

¶ 15     Among other grounds for appeal, Aspired argues that the arbitration agreement is not substantively unconscionable. We disagree and, therefore, limit our discussion to this dispositive issue.

¶ 16     Whether an agreement is unenforceable because it is unconscionable is a question of law, which we review *de novo*. *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001, ¶ 21. "A finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 21 (2006). " 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed.' " *Bain*, 2022 IL App (1st) 211001, ¶ 25 (quoting *Kinkel*, 223 Ill. 2d at 28). A contract will be found substantively unconscionable where its "terms are so one-sided that they oppress or unfairly surprise an innocent party," when there is "an overall imbalance in the obligations and rights imposed by the bargain," or when a "significant cost-price disparity" exists. *Turner v. Concord Nursing & Rehabilitation Center, LLC*, 2023 IL App (1st) 221721, ¶ 20. Unequal bargaining power and other "circumstances surrounding the transaction" are to be considered when deciding whether an agreement is enforceable. *Kinkel*, 223 Ill. 2d at 24. When examining the substantive provisions of an arbitration agreement, courts are more likely to find unconscionability when a consumer is involved and has "no hand in [the] drafting" of the

agreement, when there is a disparity in bargaining power, and when the agreement is on a pre-printed form. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 100 (2006); *Bain*, 2022 IL App (1st) 211001, ¶ 28.

¶ 17    As a threshold matter, although Aspired argued before the circuit court that any claims of unconscionability must be decided by an arbitrator based on the arbitration agreement's delegation clause, it does not raise this issue on appeal. Therefore, we do not consider it. *People v. Hampton*, 165 Ill. 2d 472, 478 (1995); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in an appellant's brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Instead, we turn to Aspired's other threshold argument that because it is an assisted living facility, not a nursing home facility, the ability to recover attorney's fees and punitive damages under the Act does not apply here and should play no part in our substantive unconscionability analysis. However, even without considering the right to attorney's fees and punitive damages under the Act, we find the arbitration agreement substantively unconscionable for the reasons that follow.

¶ 18    First, the obligation to arbitrate is entirely one-sided, greatly favoring Aspired to Hwang's detriment. Aspired's argument that the arbitration agreement is mutually binding is disingenuous because it excludes from arbitration any "rent disputes" and "action[s] for involuntary transfer or discharge or eviction," the very claims Aspired is most likely to bring against its residents. On the other hand, it requires residents to arbitrate almost all of their claims against Aspired, including personal injury claims that often arise in the assisted living context. Nevertheless, Aspired argues that because the arbitration agreement does not exclude every possible payment dispute that could arise, the arbitration requirement provision is not substantively unconscionable. When determining whether an arbitration agreement is unduly one-sided, however, we consider its real-world

application, giving less weight to the kinds of unlikely claims that may arise and be subject to arbitration under the fringes of the contract, such as Aspired's contention that it would be required to arbitrate "claims for unpaid fees and charges owed to the facility *** [stemming] from a resident's failure to pay for additional services or other non-recurring charges not encompassed by the amount paid each month in rent." We find that Aspired's decision to exempt from arbitration all of its likeliest claims while at the same time forcing its residents to arbitrate almost all of their claims, including the kind of negligence claims that residents often bring in the assisted living context, supports a finding of substantive unconscionability.

¶ 19    Our conclusion aligns with our precedent, as well as numerous precedents of other states. See, *e.g.*, *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 28-29 (2005) (finding defendant's promise to arbitrate was an "empty one" even though defendant " 'waive[d] *** all rights to pursue any legal action in a court of law,' " because it "retain[ed] the right to sue the plaintiff [in court] for a laundry list of reasons"); *Peavy v. Skilled Healthcare Group, Inc.*, 2020-NMSC-010, ¶¶ 19, 26, 470 P.3d 218 (finding an arbitration agreement substantively unconscionable when the drafting party excluded its likeliest claims from arbitration but forced the non-drafting party to arbitrate its likeliest claims); *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 383 (Ct. App. 2001) (finding that a contract provision requiring the borrower to arbitrate all claims but allowing the lender to avoid arbitration and obtain foreclosure, "the only remedy [the lender was] likely to need," was "so one-sided as to be substantively unconscionable"); *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 692 (Cal. 2000) (finding a "unilateral obligation to arbitrate" substantively unconscionable, reasoning that it is "unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when

10

it seeks to prosecute a claim against the employee" and that such a practice makes arbitration appear "less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage," a purpose for which "[a]rbitration was not intended" (internal quotation marks omitted)); *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶¶ 59-69, 290 Wis. 2d 514, 714 N.W.2d 155 (finding the "one-sidedness of the arbitration provision \*\*\* sufficient to hold the arbitration provision substantively unconscionable" because it granted the creditor a choice of forum for its claims but required the borrower to raise claims before an arbitrator and "impose[d] arbitration on the weaker party without accepting the arbitration forum for itself"); *Dan Ryan Builders, Inc.*, *v. Nelson*, 737 S.E.2d 550, 560 (W. Va. 2012) ("under the doctrine of unconscionability, a trial court may decline to enforce a contract clause—such as an arbitration provision—if the obligations or rights created by the clause unfairly lack mutuality" because it requires the weaker party to arbitrate but permits the stronger party to seek relief in court); *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 493 (Mo. 2012) (*en banc*) (finding the evidence supported a determination that an agreement's arbitration clause was unconscionable when, among other things, the terms of the agreement were entirely one-sided because the consumer was required to arbitrate, while the title company had a choice of simply repossessing the collateral by force or through suit in court, stating "[t]he fact that no consumer ever has arbitrated a claim against the title company \*\*\* makes it clear that the agreement stands as a substantial obstacle not just to arbitration but also to the resolution of any consumer disputes against the title company").

¶ 20    Aspired nevertheless argues that the arbitration agreement is not substantively unconscionable because it is supported by consideration. But cases that turn on the issue of consideration are not based on an assessment of fairness or adequacy. See *Gallagher v. Lenart*,

226 Ill. 2d 208, 243 (2007) ("In reality, plaintiffs are merely asking us to conduct a generalized inquiry into the fairness of Gallagher's bargain with Rail Terminal, which we decline to do. Courts generally will not inquire into the adequacy of consideration for a contract."). Instead, they ask only whether a contract was supported by mutual promises, regardless of whether the obligations imposed on both parties were identical ones. See, *e.g.*, *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1198 (2000); *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 238 (2008). Because the substantive unconscionability analysis turns upon the "relative fairness of the obligations assumed" (*Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 38), we find that the heavily one-sided nature of the obligation to arbitrate here supports our conclusion that the arbitration agreement is substantively unconscionable. To be sure, Illinois courts have consistently treated consideration and substantive unconscionability as separate and distinct legal concepts. See, *e.g.*, *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, ¶¶ 45, 58-61 (finding the contract at issue was supported by consideration but remanding the case for the trial court to consider the merits of plaintiffs' unconscionability claims). Thus, an agreement may be supported by consideration yet be substantively unconscionable. See, *e.g.*, *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 230-31, 236 (2009) (holding that an arbitration rider was supported by consideration but that its class action prohibition clause—"a scheme to deliberately cheat large numbers of consumers out of individually small sums of money"—was substantively unconscionable). Therefore, we conclude that the fact that the arbitration agreement may be supported by consideration does not immunize it from a substantive unconscionability attack.

¶ 21 Second, the confidentiality clause contained in the arbitration agreement, which requires the proceedings to "remain confidential in all respects" and requires the parties "not to discuss the

amount of the arbitration award or any settlement, the names of the parties, or the name/location of the Residence except as required by law," is another factor that unfairly favors Aspired, to Hwang's detriment. As this court explained in *Bain* when addressing a similar confidentiality clause, "[a]s a repeat player in arbitrations under its own contract, *** [defendant] will of course have access to information about past proceedings that the individual [consumers] it arbitrates with will lack," which " 'burden[s] an individual customer's ability to vindicate [his or her] claim[s]' " and " 'contributes to the substantive unconscionability' of the contract ' "by ensuring that none of [the defendant's] potential opponents will have access to precedent while, at the same time, [the defendant] accumulates a wealth of knowledge." ' " *Bain*, 2022 IL App (1st) 211001, ¶ 39 (quoting *Kinkel*, 223 Ill. 2d at 42, quoting *Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003)). The same is true here. Thus, the confidentiality clause contributes to the substantive unconscionability of the arbitration agreement.

¶ 22    Third, the arbitration agreement's damages cap of $250,000 supports an unconscionability finding because it is intended to limit Aspired's liability. See *Razor*, 222 Ill. 2d at 100 (finding a consequential damages exclusion clause supported a finding of unconscionability because the clause was "intended to limit the drafter's liability"). The arbitration agreement's damages cap applies to both Aspired and Hwang. However, personal injury and malpractice claims brought by Hwang and residents like her could expose Aspired to damage awards far in excess of $250,000, whereas Aspired is unlikely to have a claim for damages against a resident that would ever approach $250,000. Accordingly, the only real purpose of the damages cap is to limit Aspired's liability, another factor contributing to our finding that the arbitration agreement is substantively unconscionable.

¶ 23    Fourth, the arbitration agreement's prohibition of punitive damages is another indicator of Aspired's intent to limit its liability. If Hwang were allowed to litigate her claims in court, the facts alleged in the *negligence* counts (as opposed to the count for violation of the Act) of her complaint—that Aspired and its agents "acted willfully, wantonly, and maliciously, and/or with a conscious disregard for [her] overall health, rights, and well-being"—could support an award of punitive damages. See *Doe v. Catholic Bishop of Chicago*, 2017 IL App (1st) 162388, ¶ 14 ("the trial court may allow a claim for punitive damages if the evidence would reasonably support a finding that defendant acted 'willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others' " (quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978), and citing *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415 (1990))). Conversely, it is highly unlikely that Aspired would ever have a claim against its residents that would warrant punitive damages. Therefore, because the arbitration agreement's prohibition on recovery of punitive damages is intended to limit Aspired's liability, it too supports a finding of substantive unconscionability.

¶ 24    Finally, the fact that the arbitration agreement is on a pre-printed form, and that nothing in the record reflects that Hwang had any opportunity to negotiate its terms, also supports an unconscionability finding. See *Razor*, 222 Ill. 2d at 100 ("facts which tend to support a finding of unconscionability" include that the warranty was preprinted and that the plaintiff "had no hand in its drafting, and no bargaining power at all with respect to its terms"); *cf. Fuqua v. SVOX AG*, 2014 IL App (1st) 131429, ¶ 40 (finding the contract was not substantively unconscionable in part because plaintiff "*negotiated and requested*" some of the terms of the contract and had ample opportunity to object to and request changes (emphasis in original)). Although nonnegotiable "adhesion" contracts "are a fact of modern life" (*Kinkel*, 223 Ill. 2d at 26), the circumstances

surrounding the transaction here indicate that Hwang, who was not represented by counsel when she signed the arbitration agreement, had no real opportunity to consult with an attorney before doing so, as she signed the agreement on July 18, 2022, and was scheduled to be admitted to Aspired the next day. These circumstances weigh in favor of an unconscionability finding. *Razor*, 222 Ill. 2d at 100.

¶ 25 Taken together, the one-sided nature of the arbitration obligation, the confidentiality clause, the provision prohibiting punitive damages, the provision capping damages at $250,000, and Hwang's lack of bargaining power when signing the agreement make the arbitration agreement substantively unconscionable and, therefore, unenforceable.

¶ 26 B. Severability

¶ 27 Aspired alternatively argues that the trial court should have severed any offending provisions and enforced the rest of the arbitration agreement, based on the severability clause in the arbitration agreement. In its discretion, a court may sever unenforceable provisions from a contract. *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 21 (1993). However, a court should not sever provisions from a contract if "doing so would be 'tantamount to drafting a new contract.' " *Bain*, 2022 IL App (1st) 211001, ¶ 53 (quoting *Lee/O'Keefe Insurance Agency, Inc. v. Ferega*, 163 Ill. App. 3d 997, 1007 (1987)). Indeed, courts should be "cautioned *** against engaging in this practice, as it 'discourag[es] the narrow and precise draftsmanship which should be reflected in written agreements.' " *Turner*, 2023 IL App (1st) 221721, ¶ 47 (quoting *Lee/O'Keefe Insurance Agency, Inc.*, 163 Ill. App. 3d at 1007). Here, because a significant number of provisions of the arbitration agreement operate collectively to make it substantively unconscionable, it would be impossible to sever these provisions without essentially writing a new agreement. See *Bain*, 2022 IL App (1st) 211001, ¶ 54 ("Where, as here, the drafting party has

structured an arbitration agreement that is designed to make a claim expensive to bring, to bar any full recovery, and to ensure that the public does not learn of adverse findings against the company, the modifications necessary to render the agreement enforceable cannot be considered minor."). For this reason, we conclude that the arbitration agreement as a whole is unenforceable.

¶ 28    Because we find that the arbitration agreement as a whole is substantively unconscionable, and therefore unenforceable, we need not address Aspired's alternate arguments regarding procedural unconscionability and consideration.

¶ 29                                    IV. CONCLUSION

¶ 30    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 31    Affirmed.

---

***Hwang v. Pathway LaGrange Property Owner, LLC*, 2024 IL App (1st) 240534**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023-L-007800; the Hon. Nichole C. Patton, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Scott L. Howie, Michael J. Borree, and Laura Coffey Ieremia, of Donohue Brown Mathewson & Smyth LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | David R. Centracchio and Jacob B. Gordon, of Gordon Gordon & Centracchio, of Chicago, for appellee. |