NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250264-U

NOS. 4-25-0264, 4-25-0265, 4-25-0266 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 31, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ELIZABETH BRICKER, DAVID BRICKER, DYLAN BRICKER, LEEANN WOODS, MEGHAN WOODS, and ASHLEEN WOODS ARNETT, | ) ) ) | Appeal from the Circuit Court of Sangamon County |
|      Plaintiffs-Appellees, | ) | Nos. 23LA230 |
|      v. | ) |     23LA277 |
| ALBERT AUGUST HEINZ; HEINZ FUNERAL HOME, LLC; FAMILY CARE CREMATION, LLC; and JON CLAYTON HEINZ, | ) ) ) | Honorable |
| | ) | Gail L. Noll, |
|      Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed the circuit court's order denying defendants' motions to compel arbitration where (1) defendants did not waive their right to compel arbitration, (2) the arbitration agreement was not procedurally or substantively unconscionable, and (3) the nonsignatories were not bound to arbitrate their claims.

¶ 2    Defendants, Albert August Heinz, Heinz Funeral Home, LLC, Family Care Cremation, LLC, and Jon Clayton Heinz, appeal from an order of the circuit court denying their motions to dismiss and compel arbitration under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2024)). For the following reasons, we reverse and remand with directions to stay this action and compel arbitration.

¶ 3                      I. BACKGROUND

¶ 4        On December 14, 2023, plaintiffs, Ashleen Woods Arnett, Leeann Woods, and Meghan Woods, filed a six-count verified class action complaint alleging violations of the Crematory Regulation Act (Crematory Act) (410 ILCS 18/1 *et seq.* (West 2022)) and negligence. According to the complaint, Ashleen selected defendants to provide final arrangements and cremation services following the death of her father. After some time, Ashleen became "anxious and suspicious" because she had not yet received her father's remains and a death certificate had not been filed, so she called defendants several times to inquire about when she could expect delivery of her father's ashes. Upon delivery, the complaint alleged, defendants represented that the ashes Ashleen received were those of her deceased father. However, they were not, and the actual whereabouts of Ashleen's father's ashes were unknown.

¶ 5        The complaint further alleged the Sangamon County coroner opened an investigation regarding defendants' mishandling of human remains and discovered over 60 sets of remains apparently delivered to the wrong families. Support groups formed for individuals affected by defendants' mishandling of their loved ones' remains, whose numbers exceeded one hundred. The complaint also alleged authorities were investigating the possibility that defendant's mishandling of bodies dated back at least five years and numbered into the "hundreds." In support of this allegation, the complaint cited a Capitol News Illinois article published on December 6, 2023, which reported on other alleged instances of defendants' mishandling of human remains, wherein (1) individuals prepaid defendants for cremation services, (2) defendants gave excuses for failing to deliver, and (3) defendants either failed to perform cremation or required individuals to pick up remains falsely represented to be their loved ones. See Beth Hundsdorfer, *For at least 6 months, state failed to act on Carlinville funeral director that mishandled remains*, Capitol News Illinois, (Dec. 6, 2023),

https://capitolnewsillinois.com/news/for-at-least-6-months-state-failed-to-act-on-carlinville-funeral-director-that-mishandled-remains (last visited July 23, 2025); see also *Illinois Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 725 (2009) (documents containing readily verifiable facts may be judicially noticed if such notice will help in efficiently disposing of a case); *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 84 n.6 (taking judicial notice of an article published by the Chicago Tribune). Therefore, the complaint sought, among other things, certification of the proposed class with Ashleen as the designated representative, compensatory damages, and attorney fees and costs.

¶ 6        On December 26, 2023, plaintiffs, Elizabeth Bricker, Dylan Bricker, and David Bricker, filed a six-count verified complaint against defendants, similarly alleging violations of the Crematory Act and negligence. According to the complaint, Elizabeth selected defendants to provide funeral arrangements and cremation services following her mother's death in September 2023. Defendants insisted upon prepayment from Elizabeth before rendering any services, so David "used his credit card and paid the invoice online." Then, over the next few days, Elizabeth sent Albert several text messages regarding the approximate time for delivery of her mother's ashes. Albert either did not respond or gave excuses as to why Elizabeth's mother's ashes would not be delivered until the date of the funeral. On the morning of the funeral, Albert sent Elizabeth a text message asking her to send someone to Carlinville, Illinois, "to pick[ ]up [her] mom" because of a personal issue. Elizabeth's siblings then drove almost 50 miles from Springfield, Illinois, to Carlinville and retrieved "a decorative urn of cremains represented to be those of their mother" from Albert, "who was standing on the front porch of the funeral home."

¶ 7        The complaint further alleged that eight days after her mother's funeral, Elizabeth received a call from the Sangamon County coroner informing her "that her mother's body had

not been picked up from the hospital" and was "in an advanced state of decomposition." The coroner then met with Elizabeth and confirmed, by the personal identification number on the medallion in the urn, that the ashes Elizabeth received were not those of her mother. Elizabeth's mother was eventually cremated in October 2023.

¶ 8        On September 5, 2024, defendants filed motions to dismiss the complaints and compel arbitration under section 2-619 of the Code (735 ILCS 5/2-619 (West 2024)), asserting plaintiffs entered into a cremation and funeral services contract with defendants, which included an arbitration clause. According to defendants, because plaintiffs entered into a "valid and enforceable arbitration agreement," their claims must be dismissed and compelled to arbitration. Additionally, defendants argued the circuit court should compel arbitration and stay the proceedings because (1) all the parties' claims fell within the scope of the arbitration agreement and (2) Ashleen's and Elizabeth's signatures bound all nonsigning parties to arbitrate under the terms of the contract.

¶ 9        In support of their motions to dismiss, defendants attached the parties' signed cremation services contracts. Each contract consisted of one page and defineed "the words 'you' and 'your' " as "the Buyer and Co-Buyer, if any, signing this Agreement." The only named "Buyers" were Ashleen and Elizabeth, and only their signatures appeared in their respective contracts. Neither contract named any "Co-Buyer." The contracts authorized defendants to prepare and care for the body of the decedent, conduct funeral services, incur the charges set forth in the contract, and "collect the total amounts due" from any person who signed the contract "as Buyer or Co-Buyer." The arbitration provision was situated at the bottom of the page directly above the signature line. It was also set apart by the heading, "NOTICE TO BUYER/CO-BUYER," and stated the following in all-capitalized, bold text:

"NOTICE: BY SIGNING THIS AGREEMENT, YOU ARE

AGREEING THAT ANY CLAIM YOU MAY HAVE AGAINST

THE SELLER SHALL BE RESOLVED BY ARBITRATION

AND YOU ARE GIVING UP YOUR RIGHT TO A COURT OR

JURY TRIAL AS WELL AS YOUR RIGHT OF APPEAL."

¶ 10    Plaintiffs responded to defendants' motions to dismiss, arguing defendants waived enforcement of any alleged arbitration agreement by taking actions inconsistent with arbitration and defendants' delay in demanding arbitration prejudiced plaintiffs.

¶ 11    Specifically, plaintiffs alleged defendants initially filed motions to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)) in January 2024 and March 2024. Plaintiffs filed responses to those motions in April 2024. Plaintiffs further asserted that, in June 2024, they received "at least five" cremation services contracts between defendants and other customers that contained identical arbitration clauses, which plaintiffs e-mailed to defense counsel. Also in June 2024, plaintiffs purportedly filed a motion for class certification, to which defendants responded in August 2024. Plaintiffs stated the circuit court held a hearing on their motion for class certification later that month, at which time defendants argued the substantive issues raised in their section 2-615 motions to dismiss needed to be resolved before the court heard arguments on plaintiffs' motion for class certification. According to plaintiffs, the court granted defendants' request, scheduled a hearing for September 19, 2024, and allowed defendants to file any supplements to their motions to dismiss on or before September 5, 2024. We note, however, that none of these filings nor a transcript or bystander's report from the August 2024 hearing appear in the record.

¶ 12    Plaintiffs' response also asserted the arbitration agreement was unenforceable

because it was both substantively and procedurally unconscionable. In terms of its substantive unconscionability, plaintiffs argued the arbitration agreement provided no financial or procedural benefits as to the payment of arbitration expenses, attorney fees, or the selection of arbitrators. Further, plaintiffs alleged defendants suffered no procedural or financial detriment because they were not obligated to arbitrate and not bound to pay for any arbitration-related expenses. As to the arbitration provision's procedural unconscionability, plaintiffs asserted the contracts they signed were preprinted "adhesion contract[s]," and they were given no opportunity to negotiate the terms of the arbitration provision.

¶ 13         Defendants thereafter filed replies, asserting the arbitration provision was not substantively or procedurally unconscionable. They also insisted that all parties were bound by the arbitration provision under an agency theory. Furthermore, defendants argued they had not waived their right to compel arbitration because the circuit court had not heard arguments or made any substantive rulings on their initial motions to dismiss under section 2-615 of the Code before they withdrew them. In support of their replies, defendants attached the affidavit of Albert, who claimed he believed Ashleen and Elizabeth were acting on behalf of their nonsigning relatives when they signed the cremation services contracts. Defendants also included an affidavit from defense counsel, who stated she had no knowledge of the existence of any written contract or arbitration agreement prior to the hearing on plaintiffs' motion for class certification in August 2024.

¶ 14         In February 2025, the circuit court entered a written order denying defendants' motions to dismiss and compel arbitration under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2024)). First, the court found defendants' participation in the litigation was not so inconsistent with the right to arbitrate as to indicate an abandonment of the right. Specifically,

the court noted that while defendants "initially filed motions to dismiss which did not include the arbitration issue, those motions were withdrawn prior to being argued." The court also found nothing in the record "support[ed] a finding that Plaintiffs relied on the waiver to such an extent that allowing Defendants to retract the waiver would be unjust."

¶ 15 Next, the circuit court found the arbitration provision procedurally and substantively unconscionable. In doing so, the court observed the arbitration clause was procedurally unconscionable because it was "contained in a pre-printed form" and silent "as to any parameters of arbitration." The court also noted plaintiffs "had no hand in drafting the arbitration clause" or "any opportunity to negotiate its terms." Regarding substantive unconscionability, the court found the lack of a mutual obligation to arbitrate was so "entirely one-sided" that it supported a finding of unconscionability, noting defendants' "decision to exempt [themselves] from arbitration while requiring arbitration on all of the Buyer's claims." Finally, because the court found the arbitration clause unenforceable, it did not address whether the written contracts signed by Elizabeth and Ashleen bound all other nonsigning parties to arbitrate under an agency theory.

¶ 16 This appeal followed.

¶ 17 II. ANALYSIS

¶ 18 A. Waiver

¶ 19 Before addressing the parties' arguments, we first address plaintiffs' contention defendants waived the right to invoke the arbitration provision. "Although disfavored, waiver will be found where 'a party conducts itself in a manner inconsistent with the arbitration clause, thereby demonstrating an abandonment of that right.' " *Koehler v. The Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 22 (quoting *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago*

*Union Station Co.*, 358 Ill. App. 3d 985, 996 (2005)). "In determining whether a party has waived its right to arbitrate a claim, the crucial inquiry is whether the party has acted inconsistently with its right to arbitrate." (Internal quotation marks omitted.) *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1174 (2008). "A party acts inconsistently with its right to arbitrate when it submits arbitrable issues to a court for decision." *TSP-Hope, Inc.*, 382 Ill. App. 3d at 1174. Because the material facts are not in dispute, we review *de novo* whether defendants waived their right to invoke the arbitration provision. See *Dustman v. Advocate Aurora Health, Inc.*, 2021 IL App (4th) 210157, ¶ 29.

¶ 20        In this case, plaintiffs argue defendants waived their contractual right to arbitrate by failing to move to compel arbitration until approximately nine months after plaintiffs' complaints were filed. Plaintiffs point out that, during those months, defendants "engaged in discovery," and their initial motions to dismiss under section 2-615 of the Code, as well as their response to plaintiffs' motion for class certification, did not reference arbitration. Plaintiffs maintain that such actions were inconsistent with a right to arbitrate and indicated defendants' abandonment of any such contractual right.

¶ 21        There have been various factual and procedural settings where Illinois courts have found a party to have abandoned the right to arbitrate by filing substantive pleadings before attempting to invoke an arbitration clause, including: filing a motion for summary judgment (*Applicolor, Inc. v. Surface Combustion Corp.*, 77 Ill. App. 2d 260, 267 (1966); *State Farm Mutual Automobile Insurance Co. v. George Hyman Construction Co.*, 306 Ill. App. 3d 874, 885 (1999)); engaging in discovery, opposing an earlier attempt to compel arbitration, and failing to file for arbitration when given the opportunity (*Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1098 (2001)); filing a complaint seeking complete relief

without mentioning arbitration and requesting arbitration only after the circuit court and appellate court denied its request for a temporary restraining order and the other party had filed a motion to dismiss the complaint (*Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 426 (2007)); and failing to request arbitration until its section 2-615 motion to dismiss a complaint had been granted and then reversed on appeal (*Atkins v. Rustic Woods Partners*, 171 Ill. App. 3d 373, 378-79 (1988)). On the other hand, courts have held the following actions by a party did not constitute waiver of the right to arbitrate: filing a motion contesting venue (*Brennan v. Kenwick*, 97 Ill. App. 3d 1040, 1043 (1981)) and filing an answer including the affirmative defense of the arbitration agreement (*Kessler, Merci, & Lochner, Inc. v. Pioneer Bank & Trust Co.*, 101 Ill. App. 3d 502, 509 (1981)).

¶ 22       As shown by these decisions, "the operative distinction between judicial filings and actions that constitute a waiver of the right to compel arbitration and those that do not is whether, prior to seeking to compel arbitration, the party has placed substantive issues before the [circuit] court." *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 15. In other words, waiver is not determined by "the number of papers filed with the [circuit] court" (*Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 536-37 (1986)) or "the form" of those pleadings, but instead "by the types of issues submitted to the court for resolution." *Watkins*, 2016 IL App (3d) 140570, ¶ 15.

¶ 23       Here, the record does not show plaintiffs relied on defendants' purported waiver to such an extent that defendants' retraction of it would be unjust. See *Dustman*, 2021 IL App (4th) 210157, ¶ 33. Defendants did not interject pleadings that were anything more than responsive to plaintiffs' claims. By filing their initial motions to dismiss but then withdrawing them before plaintiffs responded and before argument, defendants have not demonstrated an

intent to waive or abandon arbitration. See *Watkins*, 2016 IL App (3d) 140570, ¶ 15; see also *TSP-Hope, Inc.*, 382 Ill. App. 3d at 1175-76 (finding no waiver where the defendant did not file anything other than pleadings that were responsive to the plaintiff's claims, despite a 10½-month delay in asserting a right to arbitration). Thus, under the circumstances of this case, we do not find defendants waived their right to arbitration.

¶ 24                                    B. The Arbitration Agreement

¶ 25        Defendants argue the circuit court erred when it denied their motions to compel arbitration. An order to compel or deny arbitration is injunctive in nature and appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 26        Defendants brought their motions to compel arbitration under section 2-619 of the Code, which provides for dismissal of a claim when the claim is barred by an affirmative matter defeating or avoiding the legal effect of the claim. See 735 ILCS 5/2-619(a)(9) (West 2024). "A motion to compel arbitration is essentially a section 2-619(a)(9) motion to dismiss or stay an action in the [circuit] court based on an affirmative matter, the exclusive remedy of arbitration." (Internal quotation marks omitted.) *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, ¶ 28. In ruling on a motion to dismiss and compel arbitration under section 2-619 of the Code, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006). Where, as here, the court denies a motion to compel arbitration without holding an evidentiary hearing, we review the order *de novo*. *Nord*, 2023 IL App (4th) 220669, ¶ 29.

¶ 27        "While public policy favors arbitration as a method of dispute resolution, an agreement to arbitrate is nevertheless a matter of contract." *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 29. The pro-arbitration policy is not intended to render

arbitration agreements more enforceable than other contracts, and it does not operate in disregard of the intent of the contracting parties. *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 55. Parties are bound to submit to arbitration only those issues they have agreed to resolve through the arbitration mechanism, and an arbitration agreement will not be extended by construction or implication. *Carter*, 2012 IL 113204, ¶ 55. Applicable state law contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration clause. *Carter*, 2012 IL 113204, ¶ 18. In this case, the circuit court denied defendants' motions to compel arbitration after finding the arbitration provision in the parties' cremation services contracts both procedurally and substantively unconscionable.

¶ 28                                    1. *Procedurally Unconscionable*

¶ 29        Procedural unconscionability generally refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware they were agreeing to it. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22 (2006). "This analysis also takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability." *Kinkel*, 223 Ill. 2d at 22. When deciding whether a contract or one of its provisions is procedurally unconscionable, courts may consider

> "all the circumstances surrounding the transaction including the
> manner in which the contract was entered into, whether each party
> had a reasonable opportunity to understand the terms of the
> contract, and whether important terms were hidden in a maze of
> fine print; both the conspicuousness of the clause and the
> negotiations relating to it are important, albeit not conclusive
> factors in determining the issue of unconscionability." (Internal

quotation marks omitted.) *Kinkel*, 223 Ill. 2d at 23.

In short, procedural unconscionability results from some impropriety during the process of forming the contract that deprives a party of a meaningful choice. *Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.*, 86 Ill. App. 3d 980, 989 (1980).

¶ 30    Here, the circuit court found the arbitration provision procedurally unconscionable for the following reasons: (1) it was contained in a preprinted form, (2) plaintiffs "had no hand" in drafting the provision or an opportunity to negotiate it, and (3) the provision was silent as to the what applicable law controls, as well as the parameters and costs of arbitration. Defendants claim these findings do not demonstrate procedural unconscionability.

¶ 31    As stated, the entire cremation services contract, which includes the arbitration provision, consists of a single page. The arbitration provision was not hidden in the contract. In fact, it was in all-capitalized, bold text, and it was situated in its own section of the contract directly above the signature line. It contained a clear heading that stated, "NOTICE TO BUYER/CO-BUYER." The arbitration provision also used straightforward language and clearly stated the parties waived the right to a jury trial. Further, reviewing the contract as a whole, there are repeated references to what rights the "Buyer" has, such as selecting or rejecting any "services and merchandise as you desire" or arranging funeral services for the deceased. There is also a paragraph above the arbitration provision titled, in bold type, "ACKNOWLEDGEMENT OF DISCLOSURE/DISCLAIMERS," listing required disclosures which asks the "Buyer" to acknowledge they have been so advised. And although plaintiffs complain over their lack of bargaining power, nonnegotiable "adhesion" contracts "are a fact of modern life," and it "cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Kinkel*, 223 Ill. 2d at 26.

¶ 32    Unfortunately for plaintiffs, despite the repulsive circumstances and vile misrepresentations regarding their loved ones' ashes—as alleged in their complaints—nothing about the transaction suggests coercion or deception. Plaintiffs presented no evidence they were rushed to sign the contract. They also do not dispute that the contract's terms and conditions were in their possession and they either read them or could have read them if they had chosen to do so prior to signing. Additionally, there is no suggestion plaintiffs did not understand the terms of the arbitration agreement or what rights they were giving up. Thus, based on these facts, we find the circuit court erred by finding the arbitration provision procedurally unconscionable. See *Kinkel*, 223 Ill. 2d at 23.

¶ 33    *2. Substantively Unconscionable*

¶ 34    "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." (Internal quotation marks omitted.) *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001, ¶ 25. A contract will be found substantively unconscionable where its "terms are so one-sided that they oppress or unfairly surprise an innocent party," when there is "an overall imbalance in the obligations and rights imposed by the bargain," or when a "significant cost-price disparity" exists. *Turner v. Concord Nursing & Rehabilitation Center, LLC*, 2023 IL App (1st) 221721, ¶ 20. Unequal bargaining power and other "circumstances surrounding the transaction" are to be considered when deciding whether an agreement is enforceable. *Kinkel*, 223 Ill. 2d at 24. When examining the substantive provisions of an arbitration agreement, courts are more likely to find unconscionability when a consumer is involved and has "no hand in [the] drafting" of the agreement, when there is a disparity in bargaining power, and when the agreement is on a preprinted form. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 100 (2006). Additionally, "[w]hen determining whether an

arbitration agreement is unduly one-sided ***, we consider its real-world application, giving less weight to the kinds of unlikely claims that may arise and be subject to arbitration under the fringes of the contract." *Hwang v. Pathway LaGrange Property Owner, LLC*, 2024 IL App (1st) 240534, ¶ 18.

¶ 35 In its written order, the circuit court concluded the arbitration provision was "entirely one-sided" due to defendants' "decision to exempt [themselves] from arbitration while requiring arbitration on all of the Buyer's claims." Defendants, on the other hand, argue a lack of a mutual promise to arbitrate will not destroy the validity of the arbitration agreement because plaintiffs' promise to arbitrate is supported by other consideration. "The doctrine of mutuality requires a contract to be based on an exchange of reciprocal promises." *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, ¶ 45. As our supreme court previously explained:

> "While consideration is essential to the validity of a contract, mutuality of obligation is not. Where there is no other consideration for a contract, the mutual promises of the parties constitute the consideration, and these promises must be binding on both parties or the contract falls for want of consideration, but, where there is any other consideration for the contract, mutuality of obligation is not essential." *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 108 (1921).

"These principles apply equally to arbitration agreements as they do to other types of contracts." *Carter*, 2012 IL 113204, ¶ 22.

¶ 36 In this case, the cremation services contract required defendants to provide certain

services to plaintiffs and that plaintiffs pay for those services. Defendants promised to provide certain cremation and funeral services, and in exchange, plaintiffs paid the invoices in full. Therefore, plaintiffs' promise to arbitrate, even if not met with a reciprocal promise to arbitrate all matters by defendants, is supported by consideration. See *Carter*, 2012 IL 113204, ¶ 24 (principles of contract law do not require an equivalent exchange of values so long as there is consideration).

¶ 37 Nonetheless, plaintiffs, relying on *Hwang*, contend the arbitration agreement is unfairly one-sided because it confers (1) no financial benefit to them regarding the payment of arbitration expenses or attorney fees, (2) no procedural benefit as to the selection of arbitrators, and (3) no financial detriment on defendants to pay for any arbitration-related expenses.

¶ 38 In *Hwang*, the plaintiff, an elderly resident of an assisted living facility, filed suit, alleging, among other things, negligence and premises liability after she sustained injuries due to a facility employee opening a door that knocked her down. *Hwang*, 2024 IL App (1st) 240534, ¶¶ 3-4. The facility moved to dismiss and compel arbitration under section 2-619(a) of the Code, citing an arbitration agreement within the residency contract to argue the plaintiff's claims must be arbitrated. *Hwang*, 2024 IL App (1st) 240534, ¶ 5. The circuit court ultimately denied the facility's motion, reasoning the arbitration agreement was unconscionable and "lacked the consideration necessary to form a valid contract because [the plaintiff] received no benefit and [the facility] suffered no detriment by signing the arbitration agreement." *Hwang*, 2024 IL App (1st) 240534, ¶¶ 8-9.

¶ 39 On appeal, the First District affirmed the circuit court's denial of the facility's motion to dismiss. *Hwang*, 2024 IL App (1st) 240534, ¶ 15. In doing so, the appellate court explained how the arbitration clause unfairly favored the facility in multiple ways. First, the

arbitration clause required residents to arbitrate nearly all claims while exempting the facility's most likely claims from arbitration. *Hwang*, 2024 IL App (1st) 240534, ¶ 18. Second, the confidentiality clause contained within the arbitration agreement deprived residents of access to precedent while allowing the facility to benefit from accumulated experience. *Hwang*, 2024 IL App (1st) 240534, ¶ 21. The arbitration agreement's damages cap and prohibition of punitive damages also supported an unconscionability finding because they served to limit the facility's liability. *Hwang*, 2024 IL App (1st) 240534, ¶¶ 22-23. And finally, the circumstances surrounding the transaction indicated the plaintiff had no real opportunity to consult with an attorney or negotiate the agreement's terms before she signed it, since she was scheduled to be admitted to the facility the next day. *Hwang*, 2024 IL App (1st) 240534, ¶ 24.

¶ 40        However, unlike in *Hwang*, the plain language of the instant arbitration provision is consistent with defendants' arguments that it is not substantively unconscionable. As stated, nothing in the record suggests plaintiffs were time-pressured into signing the contract. Nor have plaintiffs shown an overall imbalance in the obligations and rights imposed by the parties' agreement or a significant cost-price disparity. Rather, the arbitration agreement is bare bones in terms of its substance. First, the agreement does not specify any method by which an arbitrator is to be appointed. But, in the absence thereof, defendants point out that section 3 of the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/3 (West 2024)) provides an arbitrator will be appointed in a manner agreeable by the parties. If the method of appointment "cannot be agreed upon by the parties, the entire arbitration agreement shall terminate." 710 ILCS 5/3 (West 2024). Likewise, defendants emphasize that section 10 of the Arbitration Act (710 ILCS 5/10 (West 2024)) authorizes arbitrators to assess all fees and costs associated with an arbitration proceeding, except for attorney fees, when the contract is silent as to who bears those costs—

which is the case here. With respect to attorney fees, unless specified in the contract, an arbitrator has no authority to assess them under the Arbitration Act. See *Lee B. Stern & Co. v. Zimmerman*, 277 Ill. App. 3d 423, 426 (1995).

¶ 41     Given the relative lack of any specific conditions, aside from plaintiffs' promise to submit any claim against defendants to arbitration, it cannot reasonably be said that the arbitration provision is so one-sided as to be oppressive. Rather, the parties are generally on equal footing. The parties have equal input regarding the arbitrators who will decide their case. Neither party has a financial advantage, the parties pay their own attorney fees, and nothing in the arbitration agreement makes one party or the other more likely to prevail; each side bears the same risk. Thus, we conclude the circuit court erred when it found the arbitration agreement substantively unconscionable. See *Turner*, 2023 IL App (1st) 221721, ¶ 20.

¶ 42                                    C. Agency

¶ 43     Next, defendants argue that Elizabeth and Ashleen acted on behalf of all parties in this matter when they signed their respective cremation services contracts.

> "A non-signatory may be bound to an arbitration agreement
> according to ordinary principles of agency. [Citation.] In an agency
> relationship, the principal can be legally bound by action taken by
> the agent where the principal confers actual authority on the agent.
> [Citation.] Actual authority may be express or implied. [Citation.]
> Express authority directly grants power to the agent to perform a
> particular act. [Citation.] Implied authority involves actual
> authority proved circumstantially by evidence of the agent's
> position. [Citation.] Implied authority happens when the conduct of

- 17 -

the principal, reasonably interpreted, causes the agent to believe

that the principal wants him or her to act on the principal's behalf."

*Peterson v. Devita*, 2023 IL App (1st) 230356, ¶ 40.

¶ 44 Here, defendants contend Elizabeth and Ashleen acted with actual authority on behalf of all interested nonsigning parties when they signed their respective cremation services contracts and direct our attention to *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161 (D. Mass. 2007), for support. In that case, the plaintiff's friend, *with the plaintiff's consent*, purchased airline tickets and booked accommodations for herself and the plaintiff through Expedia. *Hofer*, 516 F. Supp. 2d at 166. This involved clicking through Expedia's terms and conditions, which included a liability disclaimer. When the plaintiff sued Expedia after she was injured on the trip, the district court enforced the liability disclaimer, reasoning the plaintiff's friend acted as her agent in booking the flight and accommodations. *Hofer*, 516 F. Supp. 2d at 165, 175.

¶ 45 While not binding on this court, *Hofer* is nonetheless distinguishable. Nothing in the record suggests the nonsigning parties authorized Elizabeth or Ashleen to sign the contracts on their behalf. And, contrary to defendants' assertion, the mere payment of an online invoice by one relative does not even remotely suggest that they authorized anyone to make legal decisions on their behalf. But more importantly, the plain language of the arbitration clause, which defendants conveniently ignore, clearly shows that it applies exclusively to the signatories of the cremation services contract. Specifically, the cremation services contract provides, under the caption expressly titled, "NOTICE TO *BUYER/CO-BUYER*," that "ANY CLAIM *YOU* MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION;" the contract then defines "you" as "the Buyer and Co-Buyer, if any, *signing* this Agreement." (Emphases added.)

- 18 -

¶ 46 Defendants also have not demonstrated any implied authority. Aside from Albert's self-serving affidavit, the record is silent as to what would have led defendants to reasonably believe the signatories were acting on behalf of any nonsigning party. Nothing in the record indicates the nonsigning parties were present when the contracts were signed or that they had any interaction with defendants apart from retrieving someone else's ashes. There is also no indication the nonsigning parties knew the signatories signed the documents or that they even agreed to or adopted the signatories' signatures as their own. Thus, Ashleen's and Elizabeth's signatures carry no legally binding weight regarding the litigation of any nonsigning parties' personal claims against defendants. See *Carter*, 2012 IL 113204, ¶ 55 ("[O]nly parties to the arbitration contract may *** be compelled to arbitrate.").

¶ 47                                                                        D. Stay

¶ 48 Finally, even though the Arbitration Act contains no provision specifically addressing multiparty disputes, section 2(d) (710 ILCS 5/2(d) (West 2024)) provides the circuit court must stay the proceedings for all issues subject to arbitration and has the discretion to stay issues not subject to arbitration if the issues are severable. See *Board of Managers of Courtyards at Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 74-75 (1998). "Policies favoring arbitration support a stay of all court proceedings pending arbitration 'where the arbitrable and nonarbitrable issues, although severable, are also interrelated in terms of a complete resolution of the cause between the parties.' " *Casablanca Trax, Inc. v. Trax Records, Inc.*, 383 Ill. App. 3d 183, 189 (2008) (quoting *Kelso-Burnett Co. v. Zeus Development Corp.*, 107 Ill. App. 3d 34, 41 (1982)). "[W]here the issues and relationships are sufficiently interrelated and the result of arbitration may be to eliminate the need for court proceedings, then the goals of judicial economy and of resolving disputes outside of the judicial forum are met." *Board of*

*Managers of Courtyards at Woodlands Condominium Ass'n*, 183 Ill. 2d at 76.

¶ 49 Here, all plaintiffs' claims are sufficiently interrelated in that they turn on allegations of defendants' violations of the Crematory Act and negligence. Not issuing a stay with respect to any claims by parties not bound by the agreement would likely result in multiple proceedings addressing and determining the same issues occurring simultaneously and courts may arrive at different determinations on the issues of defendants' alleged negligence and misrepresentations. Additionally, at oral argument, plaintiffs made much of the possibility that arbitration would multiply the proceedings, and they would be required to pursue some of their claims in a piecemeal and inefficient fashion because the parties to the arbitration provision would only be some of the parties to this multiparty litigation. But "a primary purpose of the *** Arbitration Act is to enforce parties' agreements to arbitrate, even if the result is piecemeal litigation." *Equistar Chemicals, LP v. Hartford Steam Boiler Inspection & Insurance Co. of Connecticut*, 379 Ill. App. 3d 771, 775 (2008). Allowing arbitration to proceed first may eliminate the need for the court proceedings, thus meeting the goals of judicial economy and of resolving disputes outside of the judicial forum. *Board of Managers of Courtyards at Woodlands Condominium Ass'n*, 183 Ill. 2d at 76. Accordingly, the circuit court's judgment denying the motions to compel arbitration is reversed. The cause is remanded for the court to allow arbitration and to stay the proceedings pending the outcome of any arbitration brought by plaintiffs.

¶ 50 III. CONCLUSION

¶ 51 For the reasons stated, we reverse the circuit court's judgment and remand with directions to stay this action and compel arbitration.

¶ 52 Reversed and remanded with directions.